AIRCO ALLOYS DIVISION, AIRCO INC., et al., Appellants, and BUFFALO COLOR CORPORATION et al., Intervenors-Appellants, v NIAGARA MOHAWK POWER CORPORATION et al., Respondents, and CARBORUNDUM COMPANY, Intervenor-Appellant.

Fourth Department, July 10, 1980

**APPEARANCES OF COUNSEL**

*Hodgson, Russ, Andrews, Woods & Goodyear (Victor T. Fuzak* and *Richard F. Campbell* of counsel), for Airco Alloys Division and others, appellants and intervenors-appellants.

*Jaeckle, Fleishmann & Mugel (John H. Stenger* of counsel), for Niagara Mohawk Power Corp., respondent.

*Thomas R. Frey (Howard L. Stevens, Karen A. Kimmel* and *Vito J. Cassan* of counsel), for Power Authority of State of New York, respondent.

*Carl E. Mooradian, Corporation Counsel (Bernard Sax* of counsel), for City of Niagara Falls, intervenor-appellant.

*Aular & Woodbury (Robert C. Woodbury* of counsel), for Carborundum Company, intervenor-appellant.

**OPINION OF THE COURT**

MOULE, J.

The United States, pursuant to treaties with Canada, is permitted to divert portions of the flow of the Niagara River for the purpose of generating hydroelectric power. The Federal Power Commission (FPC) authorized the Niagara Mohawk Power Corporation (Niagara Mohawk) by license to utilize a portion of the river flow for power generation at

certain generating stations on the Niagara River known as Federal Power Commission Project 16 (Project 16) with a capacity of 445,000 kilowatts.

On June 7, 1956 a rock slide destroyed the generating station which was the principal source of this power. As a consequence, the Untied States Congress enacted Public Law 85-159 (US Code, tit 16, § 836), known as the Niagara Power Project Act (Act), which authorized the FPC to issue a license to the Power Authority of the State of New York (PASNY) to construct and operate a power project with capacity to utilize so much of the Niagara River as was permitted under treaties with Canada.

The Act required that PASNY, as a condition of the license, provide Niagara Mohawk with 445,000 kilowatts of low cost power, equivalent to the amount produced by Project 16 prior to June 7, 1956, for resale generally to the industries which had purchased power produced by Project 16, or their successors, in order as nearly as possible to restore low power costs to such industries and for the same general purposes for which power from Project 16 was utilized. PASNY thereafter constructed power generation facilities and entered into a contract on February 10, 1961 with Niagara Mohawk (Contract NS-1) concerning the sale of replacement power to industries formerly served by Project 16. Initially, Niagara Mohawk allocated all 445,000 kilowatts it received as replacement power to local industries. Although some of the industries receiving replacement power were not originally customers of Project 16, Niagara Mohawk's allocation scheme was approved by PASNY. Subsequently, some of these industries either discontinued or reduced their usage of replacement power by an approximate total of 110,000 kilowatts, and Niagara Mohawk used this relinquished replacement power in its general system requirements.

On March 29, 1978 plaintiffs, six industrial customers of Niagara Mohawk, commenced this action against Niagara Mohawk and PASNY. Plaintiffs alleged that Niagara Mohawk was in breach of Contract NS-1 in that Niagara Mohawk utilized relinquished replacement power for general system requirements. They also alleged that, as industries currently receiving replacement power, they were entitled to all or a significant portion of the relinquished replacement power and claimed irreparable harm and damage from Niagara Mohawk's refusal to sell relinquished replacement power to

them. Plaintiffs further alleged that they were third-party beneficiaries of Contract NS-1.

Subsequently, six additional customers intervened in the action as plaintiffs, and the City of Niagara Falls (City) also intervened as a plaintiff alleging that it was an industrial customer of Project 16 similarly entitled to replacement power.

The Carborundum Company (Carborundum), a customer of Niagara Mohawk under Project 16 as well as under Contract NS-1, intervened as a party defendant and cross-claimed against defendants Niagara Mohawk and PASNY, alleging that they breached the contract in refusing to sell relinquished replacement power to Carborundum. It further alleged that Contract NS-1 required that only those industries which were industrial customers of Project 16 and whose power requirements were a significant portion of their manufacturing costs were entitled to relinquished replacement power. Carborundum alleged that, if the relinquished replacement power was distributed to all current purchasers of replacement power, as plaintiffs requested, including those who were not purchasers of Project 16 power and including those to which power is not a significant portion of manufacturing costs, it would be in violation of Contract NS-1.

Niagara Mohawk and PASNY moved to dismiss the complaints on jurisdictional and other grounds. Special Term denied the motions and we affirmed (*Airco Alloys Div., Airco, Inc. v Niagara Mohawk Power Corp.,* 65 AD2d 378). Niagara Mohawk and PASNY then served their answers and issue was joined.

Niagara Mohawk in its answer denied the material allegations of the complaint and set forth the following affirmative defenses: (1) that the court did not have jurisdiction; (2) that the complaint did not state a cause of action; (3) that the Statute of Limitations had run; (4) that necessary parties were not joined; (5) that the obligations under the contract had been fulfilled; (6) waiver and estoppel; and (7) laches.

PASNY denied the material allegations of the complaint and set forth the following affirmative defenses: (1) laches; (2) that necessary parties were not joined; (3) that the court did not have jurisdiction; (4) that another action was already pending between the parties on the same issues; and (5) Federal pre-emption. It also cross-claimed against defendant Niagara Mohawk alleging breach of contract on the part of

Niagara Mohawk in not allocating all of the replacement power to industry.

Plaintiffs moved for partial summary judgment: (1) on the issue of defendants' breach of Contract NS-1 by failing to reallocate to plaintiffs, third-party beneficiaries of the contract, all relinquished replacement power; (2) to dismiss all of defendants' affirmative defenses; (3) continuing the action on the issue of damages; and (4) for an injunction directing defendants to sell all 445,000 kilowatts of replacement power to eligible industries.

Carborundum cross-moved for partial summary judgment: (1) that Contract NS-1 obligated Niagara Mohawk to sell all 445,000 kilowatts of replacement power to eligible industries; (2) that Carborundum is a third-party beneficiary of Contract NS-1; (3) that an injunction issue directing Niagara Mohawk to sell all replacement power to such eligible customers; (4) that the action on the issue of damages be continued; and (5) that an injunction issue directing defendants to sell to Carborundum 13,000 kilowatts of replacement power.

PASNY cross-moved for partial summary judgment: (1) that an injunction issue directing Niagara Mohawk to make available to industrial consumers all 445,000 kilowatts of replacement power which it receives from PASNY; and (2) that plaintiffs' and Carborundum's complaints insofar as they seek other relief be dismissed.

Special Term granted plaintiffs' motion to strike Niagara Mohawk's affirmative defenses based upon lack of jurisdiction; failure to join necessary parties; and failure to state a cause of action. It granted plaintiffs' motion to strike PASNY's affirmative defenses based upon pendency of another action between the parties on the same issues. Special Term otherwise denied the motions. In a memorandum decision, Special Term held: (1) that neither the Act nor Contract NS-1 contained any provision specifically requiring the total allocation of all replacement power to industrial customers and, therefore, the intent of the parties to Contract NS-1 with respect to the use made of available replacement power was a material issue of fact; (2) that whether the plaintiffs had rights as third-party beneficiaries under Contract NS-1 depended upon the intent of the defendants to confer such rights and, since the defendants have denied any such intent, its determination is an issue of fact; and (3) that there were material issues of fact with respect to the affirmative defenses of waiver and estoppel,

laches, Statute of Limitations, and preclusion of relief by service contracts. Neither Niagara Mohawk nor PASNY has appealed from the order.

Plaintiffs' first contention on appeal is that Special Term erred in denying the motion for summary judgment on the question of whether Niagara Mohawk breached Contract NS-1 by utilizing relinquished replacement power to serve customers other than local industries.

■ The major objective in the interpretation of a written contract is to ascertain the intent of the parties from the language employed *(Hartford Acc. & Ind. Co. v Wesolowski,* 33 NY2d 169, 171-172). The rule "is well settled that the construction of a plain and unambiguous contract is for the court to pass on, and that circumstances extrinsic to the agreement will not be considered when the intention of the parties can be gathered from the instrument itself. (See *Bethlehem Steel Co. v. Turner Constr. Co.,* 2 N Y 2d 456, 459; *Heller & Henretig, Inc. v. 3620-168th St.,* 302 N. Y. 326; *Johnson v. Western Union Tel. Co.,* 293 N. Y. 379, 387.)" *(West, Weir & Bartel v Carter Paint Co.,* 25 NY2d 535, 540; *Long Is. R. R. Co. v Northville Inds. Corp.,* 41 NY2d 455, 461.) However, where the language employed in a contract is ambiguous or equivocal, the parties may submit parol evidence concerning the facts and circumstances surrounding the making of the agreement *(67 Wall St. Co. v Franklin Nat. Bank,* 37 NY2d 245, 248-249; *O'Neil Supply Co. v Petroleum Heat & Power Co.,* 280 NY 50, 55-56). Where such ambiguity or equivocation exists and the extrinsic evidence presents a question of credibility or a choice among reasonable inferences, the case should not be resolved by way of summary judgment *(Hartford Acc. & Ind. Co. v Wesolowski, supra,* at p 172; *Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285, 291; *Lachs v Fidelity & Cas. Co. of N. Y.,* 306 NY 357, 364) and upon such motion the extrinsic evidence will be construed in a light most favorable to the party moved against *(Becker-Fineman Camps v Public Serv. Mut. Ins. Co.,* 52 AD2d 656; *Marine Midland Bank-Eastern Nat. Assn. v Prel-Albany, Inc.,* 50 AD2d 996; *Weiss v Garfield,* 21 AD2d 156; *Jordan v Levy,* 16 AD2d 64).

Subdivision 1 of article VI of NS-1 states that "[Niagara Mohawk] shall resell the replacement power made available to it to industrial customers in accordance with Public Law 85-159." Replacement power is defined earlier in subdivision (h) of article I as "power made available by [PASNY] to [Niagara

Mohawk] pursuant to Public Law 85-159 to replace power formerly produced by [Niagara Mohawk] in its [Project 16]. The industrial consumers to whom such power is sold by [Niagara Mohawk] and the amounts sold to each shall be approved by [PASNY]." The pertinent section of the Federal Act to which the contract sections refer states, "[PASNY] shall contract * * * to sell to [Niagara Mohawk] * * * four hundred and forty-five thousand kilowatts of the remaining project power, which is equivalent to the amount produced by project 16 prior to June 7, 1956, for resale generally to the industries which purchased power produced by project 16 prior to such date, or their successors, in order as nearly as possible to restore low power costs to such industries and for the same general purposes for which power from project 16 was utilized". (US Code, tit 16, § 836, subd [b], par [3].)

Plaintiffs contend that Contract NS-1 requires Niagara Mohawk continually to reallocate all relinquished replacement power to the various eligible industries located in the Niagara Frontier Region. On the other hand, Niagara Mohawk asserts that its commitment under Contract NS-1 was to make a single effective allocation of all 445,000 kilowatts to Niagara Frontier industry to restore low cost power in accordance with the Federal Act and thereafter to continue for the term of the agreement to supply replacement power to those industries that did not voluntarily relinquish it and that any excess power could be used in its general system.

Contract NS-1 on its face is ambiguous in that it does not specify the industries which purchased power from Project 16 prior to June 7, 1956, fails to outline the general purposes for which Project 16 power was utilized, and does not address the possibility of relinquished replacement power. Consequently, it is necessary to go outside the four corners of the contract in order to determine the intent of the parties.

To overcome the ambiguity in the contract, plaintiffs offered as extrinsic evidence statements by or on behalf of Niagara Mohawk which they assert prove that Niagara Mohawk originally interpreted the contract as plaintiffs contend. Niagara Mohawk offered extrinsic evidence to support its interpretation of Contract NS-1. In addition, it demonstrated that its alleged admissions offered by plaintiffs, read in the context in which they were made, actually support Niagara Mohawk's position. When we view the evidence in the light most favorable to Niagara Mohawk, it shows that, at least through

August of 1972, PASNY did not view the utility's use of relinquished replacement power to satisfy general system requirements as inconsistent with contractual commitments. The question of whether Niagara Mohawk has, in fact, breached Contract NS-1 raises factual issues which cannot be resolved by way of summary judgment.

Plaintiffs' second contention is that Special Term erred in refusing to grant their motion for partial summary judgment on the question of whether Contract NS-1 accords them third-party beneficiary rights.

■ A third party may sue as a beneficiary on a contract made for his benefit *(Lawrence v Fox,* 20 NY 268). The intent to benefit a third party must be shown *(Port Chester Elec. Constr. Corp. v Atlas,* 40 NY2d 652; *Beveridge v New York El. R. R. Co.,* 112 NY 1) and the benefit must not be merely incidental but immediate to such a degree as to indicate the assumption of a duty to make reparation if the benefit is lost *(Associated Flour Haulers & Warehousemen v Hoffman,* 282 NY 173; *Moch Co. v Rensselaer Water Co.,* 247 NY 160). Absent such intent, the third party is merely an incidental beneficiary with no right to enforce the contract *(Port Chester Elec. Constr. Corp. v Atlas, supra; Associated Flour Haulers & Warehousemen v Hoffman, supra; Moch Co. v Rensselaer Water Co., supra; Flemington Nat. Bank & Trust Co. [N. A.] v Dolmer Leasing Corp.,* 65 AD2d 29). An incidental beneficiary is a third party who may derive benefit from the performance of a contract though he is neither the promisee nor the one to whom performance is to be rendered (2 Williston, Contracts [3d ed], § 402). While it is not necessary that a third-party beneficiary be identified or even identifiable at the time that the contract is made, he has no right to enforce the contract himself until such time as he is identified *(Matter of Associated Teachers of Huntington v Board of Educ.,* 33 NY2d 229). A party, claiming to be a third-party beneficiary, has the burden of demonstrating that he has an enforceable right *(Flemington Nat. Bank & Trust Co. [N. A.] v Domler Leasing Corp., supra).*

■ Plaintiffs have not demonstrated that they are third-party beneficiaries. First, as previously mentioned, the intent of Niagara Mohawk and PASNY, the parties to Contract NS-1, in regard to replacement power, is ambiguous even in light of the parol evidence presented. If it is a question of fact as to the parties' intention concerning the disposition of replace-

ment power, it follows that their intention to benefit a clearly identifiable third party is also a question of fact. Both Niagara Mohawk and PASNY have denied any intention to confer enforceable rights upon any industry receiving replacement power. Second, the contract specifically gives the right to PASNY to approve the industrial customers and the amount of replacement power sold to them. The contract does not designate or specifically refer to the plaintiffs as third-party beneficiaries, but gives the power to the parties of the contract to determine the specific industries and their allocations. Finally, the contract contains no specific mention nor indicates any intent of the parties concerning relinquished replacement power. It is plaintiffs' status as third-party beneficiaries in relation to the relinquished replacement power which is the gravamen of their motion, and they have clearly not demonstrated this status as a matter of law.

Plaintiffs' third contention on appeal is that the court erred in denying their motion to dismiss Niagara Mohawk's third, fifth and sixth affirmative defenses based respectively on the Statute of Limitations; Niagara Mohawk's performance of its individual replacement allotment contracts with plaintiff; and waiver and estoppel and Niagara Mohawk's and PASNY's affirmative defenses of laches. The court found that material issues of fact existed with respect to all of these defenses and, therefore, denied plaintiffs' motion to dismiss them. We shall consider them in order.

■■ The general rule applicable to contract actions is that a six-year Statute of Limitations begins to run when a contract is breached or when one party omits the performance of a contractual obligation *(State of New York v Fenton,* 68 AD2d 951; 18 Williston, Contracts [3d ed], § 2021 A, p 697). However, where a contract provides for continuing performance over a period of time, each breach may begin the running of the statute anew such that accrual occurs continuously and plaintiffs may assert claims for damages occurring up to six years prior to filing of the suit *(Bulova Watch Co. v Celotex Corp.,* 46 NY2d 606; see 54 CJS, Limitations of Actions, § 151, p 94). Inasmuch as an issue of fact exists with respect to Niagara Mohawk's obligations under Contract NS-1, it is not yet possible to determine the issue of accrual of alleged breaches of the contract and, where a triable issue of fact exists with respect to accrual of a claim, such issue should not be determined on motion *(Orloff Towers v Vermilya-*

*Brown Co.,* 50 AD2d 740). Accordingly, the court properly denied plaintiffs' motion to dismiss the third affirmative defense based upon the Statute of Limitations.

■ Niagara Mohawk asserts in its fifth affirmative defense that any obligation that it has to plaintiffs arises solely pursuant to the separate replacement allotment contracts entered into between individual plaintiffs and Niagara Mohawk pursuant to Contract NS-1 and that Niagara Mohawk has fulfilled all of its obligations under these contracts. To the extent that this argument reiterates defendant's interpretation of NS-1 and its assertion that plaintiffs are not third-party beneficiaries to that contract, it is not a proper affirmative defense, and to the extent it constitutes an argument of waiver, it is the same as the waiver defense, discussed below. Accordingly, it should be stricken.

Niagara Mohawk's sixth affirmative defense asserts waiver and estoppel. Inasmuch as waiver and estoppel are separate defenses, we will treat them separately.

■ ■ To establish waiver, it is necessary to show that there has been an " 'intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it' " *(Werking v Amity Estates,* 2 NY2d 43, 52, citing Whitney, Contracts [4th ed, 1946], p 273). Here, plaintiffs had knowledge that Niagara Mohawk was not reselling all of the replacement power to industry. Though the record, as it has been developed thus far, does not show that plaintiffs ever intentionally waived their rights, discovery is not yet complete and "summary judgment is not justified where there are likely to be defenses that depend upon knowledge in the possession of the party moving for judgment, which might well be disclosed by cross-examination or examination before trial [citations omitted]" *(Terranova v Emil,* 20 NY2d 493, 497). Accordingly, the affirmative defense based upon waiver should not be stricken.

■ Equitable estoppel prevents one from denying his own expressed or implied admission which has in good faith been accepted and acted upon by another. The elements of estoppel are with respect to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts. The party asserting estoppel must show with respect to himself: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of

the party estopped; and (3) a prejudicial change in his position *(Matter of New York State Guernsey Breeders' Co-op. v Noyes,* 260 App Div 240, 248, mod on other grounds 284 NY 197; see *Werking v Amity Estates, supra,* p 53; see, generally, 21 NY Jur, Estoppel, § 21, p 27).

Inasmuch as Niagara Mohawk asserts that its disposal of relinquished replacement power has consistently been in keeping with its intention at the time it agreed to Contract NS-1 and there is no claim of any reliance upon acts or omissions of the plaintiffs, the affirmative defense of estoppel should be stricken.

The final affirmative defense which plaintiffs assert Special Term should have stricken is the defense of laches asserted by both Niagara Mohawk and PASNY. Laches bars recovery where a plaintiff's inaction has prejudiced the defendant and rendered it inequitable to permit recovery *(Marcus v Village of Mamaroneck,* 283 NY 325; *Eastern Shopping Centers v Trenholm Motels,* 33 AD2d 930).

In order to show that he has been prejudiced, a defendant must show reliance and change of position resulting from the delay *(Mazzara v Town of Pittsford,* 34 AD2d 90). Inasmuch as we have concluded in our above discussion of estoppel that Niagara Mohawk did not change its position in reliance upon any acts or omissions of the plaintiffs, the defense of laches cannot be sustained and should be dismissed.

Finally, Carborundum contends on appeal that because Niagara Mohawk did not serve a reply to Carborundum's answer with cross claims, its affirmative defenses should be ignored insofar as Carborundum's motion for summary judgment is concerned. However, since Carborundum's pleading made no demand for an answer, its cross claim was deemed denied (CPLR 3011) and, inasmuch as Carborundum was on notice of such affirmative defenses, they are deemed interposed (see 3 Weinstein-Korn-Miller, NY Civ Prac, par 3011.03).

Accordingly, the order of Special Term should be reversed insofar as it denies plaintiffs' motion to dismiss Niagara Mohawk's fifth affirmative defense and that portion of its sixth affirmative defense that asserted estoppel and Niagara Mohawk's seventh and PASNY's first affirmative defense of laches. The order of Special Term should, in all other respects, be affirmed.

Cardamone, J. P., Simons, Callahan, and Doerr, JJ., concur.

Order unanimously modified, and, as modified, affirmed, without costs, in accordance with opinion by MOULE, J.