BENEDICTINE HOSPITAL, Individually and as Assigns of DONALD ANDERSON, et al., Respondents, v HOSPITAL UNDERWRITERS MUTUAL INSURANCE COMPANY, Respondent, and MANSOOR HAKIM et al., Appellants, et al., Defendants.

Third Department, November 1, 1984

APPEARANCES OF COUNSEL

*LeBoeuf, Lamb, Leiby & MacRae* (*Charles C. Platt* and *Michael A. Ellenberg* of counsel), for Medical Liability Mutual Insurance Company, appellant.

*James O. Guy* for Mansoor Hakim, appellant.

*Feeney & Bruhn* (*William C. Heck* of counsel), and *Kelley Drye & Warren* for Benedictine Hospital, respondent.

*Kroll, Pomerantz & Cameron* (*Kenneth S. Fiorella* and *Alvin P. Bluthman* of counsel), for Hospital Underwriters Mutual Insurance Company, respondent.

*Tabner & Carlson* (*Edward M. Scher* of counsel), for Barry Krasner, respondent.

## OPINION OF THE COURT

KANE, J. P.

On July 1, 1982, Arthur Wallace was injured while being operated on at Benedictine Hospital (the hospital) in the City of Kingston, Ulster County. A malpractice action was subsequently commenced against the hospital, Dr. Barry Krasner, director of anesthesiology at the hospital, and two nurse anesthetists who administered anesthesia during the operation. After this action was filed, the hospital notified its insurer, Hospital Underwriters Mutual Insurance Company (HUM), of the claim and, *inter alia,* sought indemnification for Serena Thurin, one of the nurse anesthetists. HUM disclaimed any liability to indemnify Thurin, claiming Thurin was not an employee of the hospital and therefore not covered by the hospital's policy with HUM. Thurin then discovered that her professional liability policy with Medical Liability Mutual Insurance Company (MLMIC) had apparently lapsed. To resolve the question of who might be liable to Thurin for indemnification in the malpractice action, the hospital brought an action for declaratory judgment against HUM, MLMIC, and the present and former directors of anesthesiology at the hospital, Krasner and Dr. Mansoor Hakim, respectively.

From 1973 to December 31, 1981, Thurin was employed by Hakim in the hospital's anesthesiology department.

Hakim, as head of the department, had agreed to ensure that the anesthesiology staff had professional liability insurance. Pursuant to that agreement, Hakim sought coverage for Thurin with MLMIC. MLMIC had a policy of insuring nonphysicians only if those persons were employees of an MLMIC-insured doctor. MLMIC was Hakim's malpractice insurer and, therefore, agreed to insure Thurin as Hakim's employee. The terms of indemnity stated that MLMIC would: "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury or death resulting from rendering or failing to render professional services in the practice of the insured's profession, personally committed during the policy period by the insured *in the course of his employment by the physician or physicians named in the declarations*" (emphasis added). Hakim was the physician named in the declarations.

From October, 1975 to December, 1981, Hakim paid all premiums for Thurin's insurance and arranged for renewal each year. In Thurin's initial application for coverage, she gave her business and home addresses but on the declaration page, her address was given as in care of Hakim. MLMIC sent all but one certificate of insurance to Thurin in care of Hakim, not to her directly.

In late 1981, the hospital sought to replace Hakim and Krasner was hired to replace him as of January 1, 1982. As part of his employment contract, Krasner was obligated to ensure coverage for malpractice for the anesthesiology staff, including Thurin. According to Krasner, Hakim agreed to continue paying Thurin's premiums on the MLMIC policy. Further, Krasner and the hospital later entered into an agreement providing that Thurin would become a temporary employee of the hospital and thereby be covered by the hospital's insurance.

On February 11, 1982, Hakim notified MLMIC that he was canceling Thurin's policy because she was no longer his employee. Hakim requested that the cancellation be made retroactive to January 1, 1982, the date Thurin ceased employment with Hakim. The policy contained a provision requiring 10 days' notice before cancellation, cancellation to become effective on the tenth day. MLMIC

sent a notice of cancellation to Thurin in care of Hakim. It also refunded the unearned premiums of the policy to Hakim on March 17, 1982. Thurin asserts, however, that she had no actual notice that the policy was canceled until July, 1982. On March 23, 1982, Krasner paid Hakim $5,925. According to Krasner, this payment was intended, among other things, as consideration for the agreement by Hakim to maintain the policy.

Under the terms of Thurin's MLMIC policy, it expired at 12:01 A.M. on July 1, 1982. Arthur Wallace sustained his injuries later the same day.

In this declaratory judgment action, HUM cross-claimed against MLMIC and Hakim, claiming that they should indemnify Thurin. Hakim moved to dismiss HUM's cross claim on the ground that it failed to state a cause of action. MLMIC then cross-moved for dismissal of, or in the alternative summary judgment on, the hospital's complaint and HUM's cross claim. Special Term denied both motions and this appeal ensued.

We turn first to Hakim's motion to dismiss HUM's cross claim against him. In this regard, the hospital's complaint alleges separate and distinct causes of action against HUM and Hakim based on different factual situations. None of the facts alleged indicate any duty of indemnity between Hakim and HUM. HUM's cross claim mentions Hakim only incidentally and alleges no cognizable elements of a cause of action for indemnity. However, it is contended by Krasner that HUM is a third-party beneficiary of an agreement between MLMIC and Hakim to provide insurance for Thurin. It is asserted under this theory that HUM has a cause of action against Hakim for damages resulting from his alleged breach of the agreement.

As a matter of law, HUM does not state a cause of action as a third-party beneficiary to such an agreement. To be a third-party beneficiary, the claimant must show an intent of the parties to an agreement to benefit the claimant (*Airco Alloys Div. v Niagara Mohawk Power Corp.*, 76 AD2d 68, 79). If there is no such intent, a claimant is an incidental beneficiary to the contract and has no enforceable rights thereunder (*supra*). The transactions between Hakim and MLMIC do not evince any indication of an

intent to benefit HUM. HUM is not the promisee of any agreement between Hakim and MLMIC, nor is any performance due to HUM under the policy.

In sum, no cause of action exists against Hakim on HUM's cross claim. Accordingly, while Special Term correctly denied Hakim's cross motion, it should have declared the rights of HUM and Hakim, specifically that Hakim had no duty to indemnify HUM on the underlying malpractice action (see *Nadel v Costa,* 91 AD2d 976; *City of White Plains v Del Bello,* 87 AD2d 483, 485, app dsmd and application for lv to app den 57 NY2d 923).

MLMIC's primary contention on appeal is that it is not obligated to provide coverage under the terms of its insurance policy issued to Thurin. In this regard, MLMIC notes, as detailed previously, that the policy stated that coverage was limited to liability that arose in the course of Thurin's employment by Hakim while under his supervision. However, there exists issues of fact with respect to this contention. Significant among these issues is the uncertainty surrounding a meeting Krasner had in December, 1981 with a Mr. Timmons of MLMIC. The record fails to reveal whether Timmons, on behalf of MLMIC, agreed to continue coverage of Thurin under Krasner's supervision, or whether he assured Krasner that the name of Thurin's supervisor was immaterial to the coverage.

■ MLMIC next contends that its cross motion should have been granted since (1) its policy issued to Thurin was canceled effective January 1, 1982, and (2) in any event, coverage under the policy, which was not renewed, expired on July 1, 1982 at 12:01 A.M. Contrary to MLMIC's argument, however, questions of fact exist with respect to these arguments. For example, it is disputed whether Hakim had the power to terminate the policy as agent of Thurin and whether MLMIC could rely on his apparent authority. Also, there are questions concerning the effectiveness of the cancellation notice sent to Thurin in care of Hakim. These issues have a direct bearing on the ultimate declaration of the parties' rights concerning any duty to indemnify Thurin. Accordingly, Special Term properly denied MLMIC's cross motion to dismiss the complaint and for

summary judgment (see *Nadel v Costa,* 91 ·AD2d 976, *supra*).

MLMIC also moved to dismiss HUM's cross claim against it. In the complaint and cross claim of the hospital and HUM, respectively, no indication is given of any basis for MLMIC to indemnify HUM. Indeed, the hospital makes separate claims against defendants based on separate fact situations. HUM does not make any allegation against MLMIC in its cross claim, nor does it mention MLMIC except in the heading of the cross claim in its answer to the complaint. Since there is no cause of action stated, there are no facts in dispute. Therefore, although Special Term properly denied MLMIC's cross motion to dismiss the cross claim by HUM against it, it should have granted MLMIC's motion for summary judgment and declared that HUM has no right of indemnity from MLMIC (see *Law Research Serv. v Honeywell,. Inc.,* 31 AD2d 900, 901).

MAIN, MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Order modified, on the law, without costs, by reversing so much thereof as denied Medical Liability Mutual Insurance Company's cross motion for summary judgment on the cross claim by Hospital Underwriters Mutual Insurance Company, and by declaring that Hospital Underwriters Mutual Insurance Company has no right to indemnification from Medical Liability Mutual Insurance Company or Mansoor Hakim, and, as so modified, affirmed.