**READCO, INC., R.D.P. Associates, Lan Associates XII, and Antonio Reale, Plaintiffs,**

v.

**MARINE MIDLAND BANK, N.A., and Eagle Rock Holding, Inc., Defendants.**

**No. 93 Civ. 8669 (KTD).**

United States District Court, S.D. New York.

March 15, 1995.

---

Shanley & Fisher, P.C., New York City (A. Dennis Terrell, Joseph M. Cerra, of counsel), for plaintiffs Readco, Inc., R.D.P. Associates, Lan Associates XII, and Antonio Reale.

Kaye, Scholer, Fierman, Hays & Handler, New York City (Barry M. Rosenfeld, of counsel), for defendants Marine Midland Bank, N.A., and Eagle Rock Holding, Inc.

### MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

The amended complaint alleges seven causes of action. The first three counts are predicated upon breach of contract. Counts four and five allege fraud based on material misrepresentations and material omissions, while counts six and seven allege "waiver" and "estoppel," respectively.

Plaintiffs originally brought this action in New Jersey Superior Court. On the basis of diversity of citizenship, 28 U.S.C. § 1332, Defendants removed the case to the United States District Court for the District of New Jersey, which then issued a consent order transferring it to this court on December 2, 1993. Defendants next moved to dismiss the complaint for failure to state a claim upon which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6). Defendants also moved to dismiss counts four and five for failure to plead fraud with sufficient particularity, pursuant to Fed.R.Civ.P. 9(b). Both parties submitted matters outside the pleadings in support of their respective positions, including affirmations, copies of letters, and copies of contracts between various parties. Deeming it necessary to consider these additional materials along with the pleadings, I chose to treat the motion as one for summary judgment under Fed.R.Civ.P. 56. I issued an order to this effect on January 31, 1995, which instructed the parties to submit any additional affidavits or other supporting documentation within twenty days of the date thereof. The parties have submitted a number of additional affirmations and documents.

### I.

Summary judgment is appropriate only where the moving party demonstrates that there exists no genuine issue of material fact, and that the moving party is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, the evidence must be construed and all inferences drawn in favor of the non-moving party. *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir.1990); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986).

The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Williams v. Smith*, 781 F.2d at 323. A non-moving party can defeat a properly asserted summary judgment motion by demonstrating the existence of a material issue of fact necessitating a trial on the merits. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Williams*, 781 F.2d at 323. To sustain this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt

as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Williams,* 781 F.2d at 323 ("Mere conclusory allegations or denials will not suffice.") In turn, the moving party may discharge its burden by "pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. Even where evidence is offered, summary judgment may still be granted if that evidence is not significantly probative. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

In the end, however, the inquiry on a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12.

At some time prior to June 21, 1991, Plaintiff Readco, Inc., entered into loan agreements with Defendant Marine Midland Bank, N.A., ("Marine"). Readco sought the loan in order to finance the purchase of land for and construction of a residential condominium building. Plaintiff Antonio Reale, who is a shareholder and president of Readco, along with the other shareholders of Readco, individually guaranteed the loans, while Plaintiffs Readco and R.D.P. Associates ("RDP") cross-guaranteed them. On June 21, 1991, Marine and its affiliate Eagle Rock Holding, Inc., ("Eagle Rock") entered into a forbearance agreement with the guarantors extending the maturity date of the loans. On June 10, 1992, after the expiration of the forbearance agreement, the parties executed a settlement agreement (the "Settlement Agreement").

According to the Settlement Agreement, Readco would convey to Defendants the land purchased with the loan funds. In exchange, Marine agreed not to sue Readco for the unpaid loans and to release the shareholders from their individual guarantees, and Eagle Rock assumed various liabilities regarding the land conveyed.

Meanwhile, Reale and co-Plaintiff Lan XII were also jointly obligated on a $3,000,000

letter of credit issued by Chase Manhattan Bank, N.A. ("Chase"). The Settlement Agreement provided for Marine to repay this debt to Chase on behalf of Reale and Lan XII:

> Upon the joint written request of Chase and Antonio Reale, made within six (6) months of the Closing Date and accompanied by the duly executed agreement of Chase, ... that, subject to the payment of $1,250,000 ... all obligations of Antonio Reale and affiliate thereof to Chase in connection with the Chase Letter of Credit and Lender's drawing of $3,000,000 thereunder are paid and discharged in full, Lender [Marine] agrees to promptly make such payment of $1,250,000 to Chase ...

(Compl. ¶ 15). However, Marine's obligation to make the payment to Chase could be partially or completely offset by the results of an audit which was to be performed on the books and records of Readco and RDP. The Settlement Agreement provided that if the audit revealed that Readco and RDP had used more than $1,980,000 of the loans issued to Readco by Marine for purposes not expressly permitted by the loan agreement or consented to by Marine in writing, Marine could reduce its payment to Chase by the amount by which the non-permitted uses exceeded $1,980,000.

The audit determining any applicable offset was also mentioned in an earlier paragraph of the Settlement Agreement which identified conditions precedent:

> Neither the Lender [Marine] or Buyer [Eagle Rock] shall have any obligation to execute or deliver any document (other than this Agreement) ... or make any payment or take any other action under *Section 2* of this Agreement unless on or prior to the Closing Date the following conditions shall have been satisfied in full or waived in writing by the party or parties for whose benefit the condition exists:
>
> \* \* \* \* \* \*
>
> (r) The Lender and the Buyer shall have received an audit (the "Audit") of the books and records of the Borrower [Readco and RDP] in form and scope satisfactory to the Lender and the Buyer, and such Audit shall find no more than $1,980,000 in

aggregate of the Loans provided by the Lender to the Borrower have been used for purposes other than as expressly permitted under the Loan Agreement or as otherwise permitted under the Loan Agreement or as otherwise expressly approved by Lender in writing. (Complaint ¶ 16).

Defendants knew that Reale and Lan XII had a financial obligation to Chase, and also that Reale and Lan XII were engaged in settlement negotiations with Chase. Prior to the closing, Defendants never gave any indication that the audit revealed non-permitted uses in excess of $1,980,000. Neither Marine nor Eagle Rock waived the audit provision in writing. On October 15, 1992, Plaintiffs closed on the Settlement Agreement and conveyed the relevant property interests to Defendants.

Subsequently, Reale and Lan XII reached a settlement with Chase (the "Chase settlement"). Pursuant to the Settlement Agreement, on March 15, 1993 Reale and Chase made a joint written request of Marine to pay the $1,250,000 in satisfaction of the Chase letter of credit. Marine thereafter sent several letters to Plaintiffs. The first letter, dated March 25, 1993, stated that Marine was reviewing its obligations referred to in Plaintiffs' letter. The second letter, dated April 13, 1993, stated that Marine had not yet completed its investigation into possible diversion of the loan funds, but that the investigation as of that date indicated possible diversions of loan proceeds which could justify a reduction in or termination of Marine's obligation to make the Chase payment. The third letter, dated April 30, 1993, stated that the now completed audit revealed non-permitted uses of over $3,300,000. Therefore, Marine refused to fund any of the Chase letter of credit.

Subsequently, Plaintiffs were unable to fulfill their obligations under the Chase settlement.

## II.

## DISCUSSION

### A. Breach of Contract

The first three counts in the complaint are based on a breach of contract theory. Count one alleges that because the condition precedent is deemed satisfied, *see infra* at 359, Defendants breached the contract by not paying the $1,250,000 to Chase. In count two, Plaintiffs claim that Defendants' breach caused them to be unable to fulfill their obligations under the Chase settlement, and as a result a $17,000,000 judgment was entered against them on behalf of Chase. Count three alleges that Defendants breached the contract intentionally, wantonly, and maliciously with the intent to injure Plaintiffs.

Essentially, Plaintiffs claim that Marine breached the Settlement Agreement by failing to make the $1,250,000 payment to Chase. The Settlement Agreement provides that if the audit revealed non-permitted uses of greater than $1,980,000, Marine could choose to either close the deal and reduce its obligation to pay Chase by the amount diverted by Plaintiffs in excess of that stated maximum, or to not close the deal at all. These provisions do not grant Plaintiffs the right to refuse to close, nor do they provide for any alterations of Plaintiffs' obligations under the Settlement Agreement, regardless of the outcome of the audit. The audit uncovered diverted loan funds of greater than $3,300,000. Thus, the excess over the stated maximum is $1,320,000, which completely offsets the $1,250,000 Marine would otherwise have owed to Chase under the terms of the Settlement Agreement.

Although Plaintiffs do not concede the results of Defendants' audit, the parties have focused this motion on the nature and effect of the audit clause itself. Readco, Lan XII, and Reale allege that Marine's completion of the audit reflecting $1,980,000 or less in non-permitted uses "was a condition precedent to the closing which, if not satisfied, was required to be waived in writing by Marine and Eagle Rock prior to the closing." (Compl. ¶ 30) The complaint also states that Marine and Eagle Rock did not waive the audit requirement, either in writing or by any other means. (Compl ¶ 31). In turn, Plaintiffs claim that the condition precedent

is deemed satisfied, basing their argument on Defendants' failure to waive that condition. (Compl. ¶ 31). Because the condition precedent is satisfied, Plaintiffs contend that Marine is obligated to make the specified payment to Chase.

Defendants claim that the audit clause was not a condition precedent. Under the Settlement Agreement, an audit result reflecting diversion of less than $1,980,000 would require both parties to close the deal. However, if the audit reflected diversion of more than $1,980,000, Marine would retain its option to close the deal (with an offset in price), although it would now also have the option of refusing to close. Thus, Defendants argue that an audit revealing less than $1,980,000 is not a condition precedent to the closing. As a result, closing the deal does not void Marine's right to offset its payments by any amount discovered by a post-closing audit to have been diverted in excess of $1,980,000.

Defendants seem to have misinterpreted the foundation of Plaintiffs' claim. Plaintiffs do not contend that completion of an audit reflecting diversion of less than the stated maximum is a condition precedent to closing, but rather that merely the completion of the audit—regardless of the result—is a condition precedent to the closing. Having failed to complete the audit before closing, Defendants supposedly waived their right to offset their payment to Chase in reliance upon that audit.

■ In general, a court should not grant summary judgment where there are genuine issues as to the inferences to be drawn from the language contained in the contract. *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir.1990). "It is only where the language *and* the inferences to be drawn from it are unambiguous that a district court may construe the contract as a matter of law and grant summary judgment accordingly." *Id.*

The present case does not fit the general mold for contract cases, though. The audit paragraph is ambiguous, at least with regard to whether it sets forth a condition precedent. However, interpreting the clause in favor of the non-moving parties (i.e. Plaintiffs), there is no rational legal basis on which to base a finding for Plaintiffs. Hence, there is no issue worthy of submission to a jury for determination, and summary judgment is appropriate.

The Settlement Agreement expressly states that each listed condition precedent must be "satisfied in full or waived in writing by the party or parties for whose benefit the condition exists." (Compl. ¶ 16) Assuming that completion of the audit were a condition precedent running to Defendants' benefit, it must have been satisfied in full or waived in writing by Defendants. Plaintiffs' argument that the condition was satisfied because Marine waived the condition by not waiving it in writing as required by the Settlement Agreement is circular, illogical, and in direct contradiction of the express terms to which the parties agreed.

Assuming that the condition precedent runs to the benefit of Plaintiffs, it would have had to be satisfied in full or waived in writing by Plaintiffs. Therefore, Plaintiffs' claim that the condition was satisfied because Defendants waived it by virtue of not having waived it in writing would again be illogical.

If the condition precedent runs to the benefit of both Plaintiffs and Defendants, it would have to be satisfied in full or waived in writing by both Plaintiffs and Defendants. Thus, Plaintiffs' claim that the condition was satisfied because Defendants waived it by not waiving it in writing is illogical.

If the completion of the audit were not a condition precedent, Plaintiffs' entire breach of contract argument would be moot.[1]

Regardless of whether the audit paragraph sets forth a condition precedent, and regardless of to whose benefit the audit paragraph runs, Plaintiffs have failed to demonstrate the existence of a material issue of fact regarding the breach of contract claims. Therefore, under either a straightforward reading of the contract or under any possible

---

1. It may be that the audit clause could be construed as a duty to be performed prior to the closing, in which case the issue of a material breach would arise. However, as Plaintiffs consider the audit to be a condition precedent, that issue is not presently before the court.

interpretation thereof, no genuine issue of material fact exists regarding the alleged breach of contract which would require submission to a jury. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. at 2553, 91 L.Ed.2d 265 (1986); *Williams,* 781 F.2d at 323. Defendants are entitled to summary judgment on counts one, two, and three as a matter of law.

### B. Common Law Fraud

 Counts four and five allege common law fraud. To establish fraud under New York common law,[2] a plaintiff must demonstrate 1) a material false misrepresentation or omission; 2) made with knowledge of its falsity; 3) with the intent to defraud; 4) upon which the plaintiff reasonably relied; and 5) damage to the plaintiff due to that reliance. *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 276 (2d Cir.1992). *See also Flickinger v. Harold C. Brown & Co., Inc.,* 947 F.2d 595, 599 (2d Cir.1991); *Cramer v. Devon Group, Inc.,* 774 F.Supp. 176, 181 (S.D.N.Y.1991). A fraudulent concealment claim requires an additional showing of the defendant's failure to meet its duty to disclose the material fact. *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 152 (2d Cir.1993).

#### 1. Material Misrepresentation

 In count four, Plaintiffs claim that prior to the closing Defendants advised them that the audit had been successfully completed, and that it revealed diversion of $1,980,-000 or less in non-permitted uses. Defendants allegedly knew that this assertion was a material misrepresentation, and intended that Plaintiffs rely thereon in their settlement negotiations with Chase.[3] However, following the closing and Plaintiffs' settlement with Chase, Marine disclosed the actual audit results which reflected excess diversion, thereby relieving Defendants of any obligation to pay Chase. As a result of Defendants' refusal to pay, Plaintiffs could not satisfy their obligations under the Chase settlement. In this manner, Plaintiffs relied on the misrepresentation to their detriment.

Plaintiffs have alleged that Defendants intended for them to rely upon the material misrepresentation during their settlement negotiations with Chase. Unlike their obligation to close with Defendants, Plaintiffs were not obligated to settle with Chase, regardless of the audit results. Moreover, Plaintiffs might have sought different terms from Chase had they known that Defendants' audit revealed excess diverted funds sufficient to relieve them of the obligation to fund the Chase letter of credit on behalf of Plaintiffs.[4]

However, Plaintiffs have provided absolutely no evidence to support their allegations that Defendants informed them that either the audit had been successfully completed prior to the closing and/or that it

---

2. Paragraph 21(c) of the Settlement Agreement expressly states that the applicable law will be that of the State of New York.

3. The complaint is devoid of allegations as to any actions or omissions by Marine which influenced Plaintiffs in their intent to settle with Chase, because they claim that they were already engaged in negotiations with Chase at the time that they closed with Marine. Therefore, Plaintiffs appear to be alleging that Marine's actions or omissions influenced their acceptance of the final terms of the Chase settlement.

4. It should be noted that Plaintiffs were far from being innocent bystanders who were caught unwittingly by either the audit's revelation of unauthorized diversion of funds, or by Defendants' subsequent actions. On March 18, 1992, Defendants' attorney wrote a letter to counsel for Plaintiffs Readco, Reale, and RDP, in which he discussed a draft settlement agreement between the parties, as well as a particular financial disclosure made by Reale to Marine. The relevant portions of that letter read as follows: ... Mr. Reale has recently advised Marine that $1,480,-000 of loan proceeds ... was used to fund payments to Mr. Reale ...

This revelation by Mr. Reale is of serious concern to Marine and has caused Marine to reconsider the Chase payment issue. Nonetheless, Marine is willing to go forward with negotiations regarding the settlement agreement pending receipt of further written information from Mr. Reale regarding the possible prohibited use of loan advances, as well as completion of the audit. Marine reserves all of its rights (both prior to and subsequent to the execution of any settlement agreement) with respect to the possible prohibited use of loan advances disclosed by Mr. Reale and any other violations by the Borrower.
(Podair Aff. Ex. 1).

revealed unauthorized diversion amounting to $1,980,000 or less. Thus Plaintiffs have not offered any evidence to the effect that Defendants made a material misrepresentation to them, much less one which induced their detrimental reliance. Accordingly, Defendants are entitled to summary judgment as to count four.

### 2. Material Omission

■ Plaintiffs further assert that Marine failed to disclose material facts regarding the audit. Two alternate theories of non-disclosure have been pleaded: (1) that Defendants did not disclose the results of a pre-closing audit, or (2) that Defendants did not disclose the fact that a pre-closing audit had not been satisfactorily completed. Plaintiffs seem to allege that in reaching their settlement with Chase, they relied on the assumption, fostered by the non-disclosures, that Marine would pay the full $1,250,000 to Chase.

As in count four, Plaintiffs allege Defendants' intent to induce reliance, as well as their own reliance upon the non-disclosures. Plaintiffs were not obligated to settle with Chase, and might have sought different terms had they known that Defendants intended not to fund the Chase letter of credit as a result of the audit findings.

The fifth count states that prior to the closing, Defendants Marine and Eagle Rock failed to inform Plaintiffs that the audit revealed non-permitted uses of greater than $1,980,000. The first problem with this claim is that completion of the audit was not a condition precedent, and therefore the disclosure of the results of that audit could not be a condition precedent to the closing, either. Furthermore, there is nothing to indicate that Defendants had nevertheless completed a pre-closing audit and simply refrained from disclosing the results to Plaintiffs. Rather, all of the evidence presented indicates that the audit was completed after the closing.

In addition, Plaintiffs have identified Marine and Eagle Rock as the Defendants who made the fraudulent omissions, but have not identified the particular individuals who had a duty to make the disclosures. Moreover, the only allegation in count five which resembles scienter is that Defendants "actively en-couraged" Plaintiffs' misconception that the audit was satisfactory. (Compl. ¶ 52) Plaintiffs have offered no evidence regarding what acts Defendants committed to "actively encourage" Plaintiffs' misconceptions, though. As a result, Plaintiffs have failed to provide adequate support for an inference of scienter on the part of Defendants.

Plaintiffs have thus failed to provide any evidence which might indicate that Defendants failed to make a material disclosure of which they had an obligation to inform Plaintiffs, much less one upon which Plaintiffs could have detrimentally relied. Summary judgment in favor of Defendants as to count five is therefore warranted.

### C. Waiver

■ As I noted in *K. Bell & Associates, Inc. v. Lloyd's Underwriters,* waiver involves the intentional and voluntary relinquishment of a known and existing right. 827 F.Supp. 985, 989 (S.D.N.Y.1993) (citing *Nassau Trust Co. v. Montrose Concrete Products Corp.,* 56 N.Y.2d 175, 184, 451 N.Y.S.2d 663, 436 N.E.2d 1265 (1982); and *Albert J. Schiff Assoc., Inc. v. Flack,* 51 N.Y.2d 692, 698, 435 N.Y.S.2d 972, 417 N.E.2d 84 (1980)). The sixth count alleges that because Defendants failed to reveal prior to closing that the audit had not been satisfactorily completed, and also because they failed to waive the audit condition in writing prior to closing, Defendants waived their right to contest their obligation to pay the full $1,250,000 to Chase. The complaint thus sets forth a claim of waiver based on an omission, but fails to allege any knowing or voluntary relinquishment of a right. As a result, Plaintiffs have not adequately pleaded the knowing and voluntary element of waiver, and there is a distinct absence of evidence to support the ·claim contained in count six. *See Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54. Therefore, summary judgment in favor of Defendants is appropriate as to count six.

### D. Estoppel

■ Equitable estoppel operates to prevent one party from enforcing a right

where that party has indicated by either its conduct or words that it will not seek such enforcement, and another party reasonably relies thereon to its detriment. *Travellers Int'l AG v. Trans World Airlines, Inc.,* 722 F.Supp. 1087, 1098 (S.D.N.Y.1989). To adequately state a claim for equitable estoppel, a party must plead a lack of knowledge of the true facts, reliance on the other party's conduct, and a prejudicial change in position. *Broadworth Realty Associates v. Chock 336 B'way Operating, Inc.,* 168 A.D.2d 299, 562 N.Y.S.2d 630, 632 (1st Dep't 1990) (citing *Airco Alloys Division. v. Niagara Mohawk Power,* 76 A.D.2d 68, 430 N.Y.S.2d 179, 188 (4th Dep't 1980)).

In count seven, Plaintiffs claim that Marine is estopped from reducing its payments to Chase based on the audit results. Plaintiffs allege that Marine concealed the fact that the audit had been completed and that it revealed diversion of over $1,980,000; that Marine knew these facts; that Defendants actively encouraged Plaintiffs to close on their deal with the understanding that Marine would pay Chase; and that Plaintiffs relied upon Defendants' misrepresentations when negotiating their settlement with Chase, which resulted in substantial detriment to Plaintiffs when Marine later refused to pay Chase. Each of these allegations is either bereft of factual support or is in direct contradiction with the evidence submitted. *See supra* at B.1–2. As a result, there is no genuine issue of material fact, and summary judgment in favor of Defendants on count seven is merited.

### III.

### CONCLUSION

For the foregoing reasons, summary judgment in favor of Defendants is granted pursuant to Fed.R.Civ.P. 56. The complaint is hereby dismissed in its entirety.

SO ORDERED.