Order, Supreme Court, New York County (Richard B. Lowe, III, J.), entered August 21, 2009, which granted defendant bank’s (BNS) motion to dismiss plaintiffs’ complaint as barred by the statute of limitations, unanimously affirmed, with costs. Appeal from oral ruling, same court and Justice, rendered November 13, 2008, which denied plaintiffs leave to file an amended complaint, unanimously dismissed, without costs, as taken from a nonappealable paper. Appeal from order, same court and Justice, entered on or about September 11, 2008, which, insofar as appealed from as limited by the briefs, granted defendant’s motion to dismiss, for failure to state a cause of action, plaintiffs’ claims for unjust enrichment and imposition of a constructive trust, unanimously dismissed, without costs, as untimely.
Plaintiffs are Mexican citizens who, along with other Mexican citizens, were shareholders in a financial company (herein GFI/ Inverlat) that, in 1994, during the economic crisis in Mexico, was unable to collect on and repay loans, resulting in the need for additional capital to satisfy regulatory requirements. In December 1995, the Mexican government lent GFI/Inverlat 6.5 billion pesos (approximately US $857.5 million), taking in return *930 99.0349% of GFI/Inverlat’s shares through the government agency Fondo Bancario de Protección al Ahorro (FOBAPROA), a trust created to support distressed financial institutions. At about the same time, BNS paid $175 million for 10% of GFI/ Inverlat’s stock and for bonds that could be converted into an additional 45% of the stock in the future. Ultimately, through a series of agreements, BNS acquired 91% of GFI/Inverlat’s shares, leaving plaintiffs with 9% of the stock. The gravamen of plaintiffs’ complaint, filed in May 2006, is that, pursuant to certain contractual undertakings referred to as guidelines, they were entitled to receive stock in GFI/Inverlat and that BNS breached the guidelines by providing false information to the accounting firm that reported to the Mexican government in March 2000 with respect to the collection of troubled loans, causing the Mexican government to deliver less GFI/Inverlat stock to plaintiffs than BNS knew they were entitled to receive.
Plaintiffs’ contract claim is barred by the six-year statute of limitations (CPLR 213 [2]). Contrary to plaintiffs’ argument, the limitations period did not begin to run in January 2004 when the Mexican government declared plaintiffs eligible to receive a 9% share, but in March 2000 when, as plaintiffs allege, BNS breached the guidelines by providing the false information (see Ely-Cruikshank Co. v Bank of Montreal, 81 NY2d 399, 402 [1993]). “Knowledge of the occurrence of the wrong on the part of the plaintiff is not necessary to start the Statute of Limitations running in a contract action” (id. at 403 [internal quotation marks and brackets omitted]). No injustice appears, even accepting that plaintiffs did not know of the breach until after they were declared eligible for only 9% of the stock in 2004, as plaintiffs do not explain why they did not file a complaint at that time, which was well within the six-year period (see id. at 404). Nor does it avail plaintiffs to argue that defendant, after supplying false information in March 2000, continuously breached its obligations thereafter by “failing to supply accurate collections information” and “allowing the Government to act on that false information,” without identifying a more recent, affirmative breach that occurred within the limitations period (see Aireo Alloys Div. v Niagara Mohawk Power Corp., 76 AD2d 68, 80 [1980]). Plaintiffs’ contention that the statute of limitations on their contract claim did not begin to run until “after July 31, 2000,” at the end of the measuring period under the guidelines for determining losses from troubled loans, is raised for the first time on appeal, and in any event unavailing. It appears that the formula utilized to determine plaintiffs’ entitlement to purchase additional shares was “measured by GFI losses covered by FOBAPROA” (emphasis added), which *931 covered losses only to December 31, 1999. As a result, at the time the accounting firm issued its final report in March 2000, the calculation of plaintiffs’ entitlement to additional equity was not going to change, even if the results were not issued until on or after July 31, 2000.
The motion court’s denial, during oral argument, of plaintiffs’ motion for leave to amend, is not appealable. No appeal lies from a ruling (Matter of Grisi v Shainswit, 119 AD2d 418, 420 [1986]), and the transcript was not “so ordered” by the court (CPLR 5512 [a]; 2219 [a]; see Nam Tai Elees., Inc. v UBS PaineWebber Inc., 46 AD3d 486, 487 [2007]). Plaintiffs’ September 21, 2009 appeal from the order that was entered on or about September 11, 2008 and served with notice of entry on or about October 17, 2008 is untimely (CPLR 5513 [a]). Concur— Andrias, J.P, Saxe, Sweeny, Nardelli and Catterson, JJ.