SIDNEY J. SALZMAN et al., Doing Business as RIVER DEVELOPMENT COMPANY, Plaintiffs, v HOLIDAY INNS, INC., Defendant and Third-Party Plaintiff-Appellant; INSTLCORP, INC., Third-Party Defendant-Respondent.

Fourth Department, June 6, 1975

*Nixon, Hargrave, Devans & Doyle (Michael T. Tomaino* of counsel), for appellant.

*Streppa, Osgood, Cleary, Persons & Gaenzle (E. Garrett Cleary* of counsel), for respondent.

MOULE, J. P. The question presented on this appeal is whether a contractor who provides interim financing for a construction project may maintain a cause of action as a third-party plaintiff against a permanent financer for an alleged breach by the latter of a financing commitment to the owner, after the owner sues the contractor, claiming that the contractor's delay in construction was the cause of the damages which accrued as a result of the breach.

The facts of the case are not in dispute. Plaintiffs' predecessor, L. S. & G. Development Corporation (LS & G), was the owner of a parcel of land in the City of Rochester. In January, 1968 it contracted with defendant third-party plaintiff Holiday Inns, Inc. (Holiday) for the latter to construct a 6.2 million dollar, 502-room motor hotel on the site. Holiday was to serve as general contractor for the project and was also to provide interim financing. The agreement was contingent upon LS & G's securing a firm commitment for a permanent mortgage loan by June 15, 1968.

LS & G secured such a commitment from third-party defendant Instlcorp on April 19, 1968. The commitment provided that Instlcorp would loan LS & G 7.5 million dollars at 7¾% interest upon completion of the project and that such loan was to be secured by a first mortgage on the property. It also provided that construction was to commence on July 31, 1968

and that the loan offer would remain open for 18 months thereafter. Further, it contained a provision whereby an extension would be granted in the event of "[a]ny delay in construction or commencement thereof by reason of force majeure, strikes, civil disorder and/or act of God or any event beyond the control of L. S. & G."

On May 14, 1969 a letter was sent by the attorneys for plaintiff's predecessor to Instlcorp requesting that the commitment be extended until August 21, 1970. The letter stated that the project had been delayed due to problems with utility lines, the construction of a retaining wall, and underground site conditions, and that Holiday, as interim financer, and its bank, the Chemical and Security Trust Company, were concerned at the prospect that the delay might affect Instlcorp's commitment for permanent financing.

The record is silent as to Instlcorp's response to this request. However, a letter from Instlcorp to LS & G dated December 15, 1969 indicates that on or about that date Instlcorp and LS & G reached an agreement to amend the commitment to provide for its extension through September 1, 1970 but at an interest rate of 9% rather than the 7¾% originally negotiated.

Sometime after the motor hotel project was completed and Holiday was paid, plaintiffs, as successor in interest to LS & G, commenced an action against Holiday seeking 5.5 million dollars in damages for alleged shoddy construction of the facility. Included in its complaint were four causes of action seeking one million dollars in damages as a result of Holiday's failure to complete the work on time, which failure led to LS & G's having to pay a higher rate of interest to assure extension of its permanent financing commitment from Instlcorp. Holiday served an answer denying the allegations of plaintiffs' complaint and setting forth several affirmative defenses and counterclaims. It also served a third-party complaint on Instlcorp, claiming to be a third-party beneficiary of the permanent financing agreement between Instlcorp and LS & G and that Instlcorp had breached its part of that bargain by refusing to extend the commitment date without extracting a higher interest rate for so doing. In the alternative, Holiday alleged a right of subrogation to LS & G's claim against Instlcorp should LS & G succeed in its action against Holiday and further alleged that should LS & G succeed, Instlcorp, by implied contract with Holiday, would be bound to indemnify

Holiday for its losses. Instlcorp moved to dismiss Holiday's third-party action on the ground that it failed to state a cause of action. Its motion was granted and Holiday has appealed.

In a memorandum decision accompanying its order dismissing Holiday's complaint, the trial court held that Holiday was not a third-party beneficiary of the financing agreement between LS & G and Instlcorp because there was nothing in the agreement indicating an intent to benefit Holiday. The court stated that Instlcorp promised to render performance to LS & G, not to Holiday. If anything, Holiday was only an incidental beneficiary. The court found that since Holiday was not a third-party beneficiary, the contracting parties were free to amend their agreement to provide for a higher interest rate without Holiday's consent. It further held, albeit tersely, that Holiday was not entitled to recover either under its subrogation or implied contract theories.

On this appeal Holiday urges that the trial court erred in not finding it to be a third-party beneficiary to the permanent financing agreement and also presses arguments in support of its recovery as a subrogee or indemnitee under an implied contract between it and Instlcorp.

The general rule with regard to third-party beneficiary contracts is that an intent to confer a direct benefit on a third party must clearly appear in order to enable such a party, not named in the contract, to recover thereunder *(Snyder Plumbing & Heating Corp. v Purcell,* 9 AD2d 505). The benefit so conferred must not be merely incidental but must be immediate in such a sense and to such a degree as to indicate the assumption of a duty to make reparation if the benefit is lost *(Associated Flour Haulers & Warehousemen v Hoffman,* 282 NY 173; *Moch Co. v Rensselaer Water Co.,* 247 NY 160). An incidental beneficiary is a person who may derive benefit from the performance of a contract though he is neither the promisee nor the one to whom performance is to be rendered (2 Williston, Contracts [3d ed], § 402). As Williston says, the typical case of an incidental beneficiary is where "A promises B to pay him money for his expenses. Creditors of B [though they may incidentally benefit by the performance of A's promise] are not generally allowed to sue A" (2 Williston, Contracts [3d ed], § 402, *supra).*

The Restatement of Contracts, in section 133, gives this example: "B promises A for sufficient consideration to pay whatever debts A may incur in a certain undertaking. A

incurs in the undertaking debts to C, D and E. If, on a fair interpretation of B's promise, the amount of the debts is to be paid by B to C, D and E, they are creditor beneficiaries; if the money is to be paid to A in order that he may be provided with money to pay C, D & E, they are at most incidental beneficiaries" (Restatement, Contracts, § 133, Illustration 9).

In the instant situation the agreement between Instlcorp and LS & G called for Instlcorp to pay money to LS & G, not to Holiday. LS & G would then use the money to discharge its obligation to Holiday. Thus, as in the above examples, Holiday is an incidental beneficiary and no more.

The trial court also properly concluded that Holiday has no right as a subrogee of LS & G against Instlcorp. A right of subrogation may arise when one party uses his money to discharge the obligation of another to a third person. In such case the person who actually paid the debt steps into the shoes of the person paid and acquires his rights as against the one whose debt was discharged by the subrogee (57 NY Jur., Subrogation, § 1; Restatement, Restitution, § 162). The essential element to acquiring a right of subrogation is that the person seeking subrogation must have made a payment, or had his funds or other property applied to discharge another's obligation *(Gerseta Corp. v Equitable Trust Co.,* 241 NY 418; *American Sur. Co. v Palmer,* 240 NY 63). In this situation it is clear that Holiday made no such payment nor could it be contemplated to have made such a payment, assuming the success of LS & G's action against it, without stretching the principle of subrogation far beyond its traditional limitations.

However, the trial court erred in dismissing Holiday's complaint insofar as it was grounded on the related indemnity theory. Indemnity may be distinguished from subrogation in that in an indemnity situation an obligor pays his own debt and then seeks reimbursement from a third party who, by express or implied obligation, may be the one actually responsible for its incurrence *(Brown v Rosenbaum,* 287 NY 510; Restatement, Restitution, § 76). The principle upon which it rests is that the true wrongdoer should bear the ultimate burden of payment *(Dunn v Uvalde Asphalt Paving Co.,* 175 NY 214). Under the theory of *Dole v Dow Chem. Co.* (30 NY2d 143) and *Kelly v Long Is. Light. Co.* (31 NY2d 25), it is enough for third-party plaintiff to show that part of the original plaintiff's injury was due to third-party defendant's additional wrongdoing.

It appears from exhibits attached to plaintiffs' complaint that delays occurred which were arguably beyond LS & G's control. Also, that such delays were forcing a postponement of the completion date beyond the period expressly authorized by Instlcorp's commitment agreement and that Holiday's interim financers were threatening to pull out unless Instlcorp acknowledged in writing that the delays extended the time of the permanent mortgage commitment under the uncontrollable delay clause. If Holiday should be found liable to LS & G for causing the delays which resulted in LS & G's having to make higher interest payments to Instlcorp, Holiday may be able to prove that Instlcorp brought wrongful pressure on LS & G in obtaining a renegotiation of the loan commitment, thus adding to the damages for which Holiday would be liable.

Accordingly, the order dismissing Holiday's third-party complaint should be reversed and the motion denied.

SIMONS, J. (dissenting). Defendant may defeat plaintiffs' suit for damages predicated upon the increased interest charges by establishing either that the delay was not Holiday's fault or that the increased interest rate was due to the mistake of LS & G in renegotiating the contract.

Paradoxically, to have any semblance of a claim against Instlcorp, Holiday must prove that the blame for the delay rests exclusively with someone other than plaintiffs' predecessor, LS & G, and that Instlcorp was obliged under paragraph 11 to extend its original commitment. Furthermore, recovery over of any payment by Holiday will be made upon a finding that Holiday is responsible for the loss caused by delay in construction. Thus, Holiday must claim that it has paid damages resulting from its own delay in construction (it has not cross-claimed against anyone else) and that Instlcorp must indemnify it for that loss.

It is difficult to visualize how any indemnity theory may be stated to establish that Instlcorp will have been unjustly enriched by Holiday's payment to plaintiffs under those circumstances. It is the general rule that "a person who, in whole or part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct" (Restatement, Restitution, § 76; *Brown v Rosenbaum,* 287 NY 510). Payment to plaintiffs will follow proof of Holi-

day's fault and will not result in any beneficial effect to Instlcorp because plaintiffs have no cause of action which they can assert against Instlcorp.

The majority opinion finds a cause of action in favor of plaintiffs predicated upon breach of contract or overreaching. The breach of contract claim is meritless, for LS & G voluntarily renegotiated the commitment agreement. Unless that new agreement is voidable for overreaching, it is a binding obligation.

The general theory of economic duress or business compulsion is stated in *Austin Instrument v Loral Corp.* (29 NY2d 124, 130–131). A contract is voidable for economic duress when the party making the claim was forced to agree to the contract because of wrongful threats precluding the exercise of its free will. LS & G might have such a claim by proving that Instlcorp threatened to breach its agreement for permanent financing unless LS & G agreed to an increase in the interest rate, that no other source of credit at the same rate was available to LS & G and that it had no adequate remedy for Instlcorp's threatened breach. Neither LS & G nor plaintiffs however have made such a claim. The renegotiated commitment cannot be avoided for duress unless a prompt disclaimer of the contract has been asserted *(Austin Instrument v Loral Corp., supra,* p 133; *Oregon Pacific R.R. Co. v Forrest,* 128 NY 83, 92–93; *Port Chester Elec. Constr. Corp. v Hastings Terraces,* 284 App Div 966, 967). Plaintiffs may not interpose it successfully at this late date and if the cause of action does not exist for plaintiffs, then Holiday may not assert it (cf. *Barry v Niagara Frontier Tr. System,* 35 NY2d 629, 633).

To state the case another way, Instlcorp had no legal relationship with Holiday and breached no duty owed to it. The majority's holding imposes a duty on Instlcorp to extend the commitment to LS & G. It holds that a lender is liable to a defaulting contractor for the contractor's construction delay which occasions the renegotiation of a financing commitment with a higher interest rate although the lender is not liable to its borrower for charging higher interest.

While we may not go behind the pleading on this motion to dismiss for insufficiency, it requires no great flight of imagination to understand what happened here. LS & G had a problem which frequently confronts real estate developers — the expiration of its commitment for permanent financing. It made a pragmatic decision to renegotiate the commitment

with Instlcorp rather than to insist that it was entitled to an extension or look elsewhere for financing. Whether its decision was correct is a matter of defense in the action between plaintiffs and Holiday. But Holiday should not be permitted to escape the consequences of its fault or that of LS & G and place the loss on Instlcorp which did what any intelligent lender would do in a rising money market, that is, renegotiate an expired commitment at a rate closer to the current interest market.

The order should be affirmed.

CARDAMONE, MAHONEY and GOLDMAN, JJ., concur with MOULE, J. P.; SIMONS, J., dissents and votes to affirm the order, in an opinion.

Order reversed with costs and motion denied.