**HBL INDUSTRIES, A DIVISION OF HOUSTON BARGE LINE, INC., Plaintiff,**

v.

**The CHASE MANHATTAN BANK (NATIONAL ASSOCIATION), Defendant.**

**No. 81 Civ. 4242–CSH.**

United States District Court, S.D. New York.

Jan. 8, 1985.

---

Townley & Updike, New York City, for plaintiff; Elliot Paskoff, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant; Eugene F. Farabaugh, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This action arises as the result of the bankruptcy of a non-party, Seatrain Lines, Inc. ("Seatrain"). A subsidiary of Seatrain, Seatrain Shipbuilding Corporation ("Shipbuilding"), maintained a bank account with defendant Chase in which plaintiff HBL claims a derivative interest. Upon the bankruptcy of Seatrain, Chase is alleged to have improperly claimed the funds in the Shipbuilding account as a set-off against various unsatisfied Seatrain debts. HBL now sues to recover some of those funds. Chase moves to dismiss under Rule 12(b)(6), Fed.R.Civ.P.

The complaint alleges that in 1976 HBL entered into a contract with Shipbuilding to supply equipment for the construction of two barges. In January, 1980, Shipbuilding entered into a Barge Preparation Agreement ("the Agreement") with the United States Maritime Subsidy Board ("the Board"), which, *inter alia*, established the disputed account with Chase. The purpose of the account, stated in Article III(a) of the Agreement, was to satisfy the invoices of companies which supplied materials for construction of the two barges for which HBL supplied equipment. The complaint does not explain the circumstances which gave rise to this Agreement.

Because HBL supplied equipment for the barges, it considers itself entitled to a share of the funds in this account. The complaint alleges that plaintiff made a demand for payment upon Chase. Chase refused to release any funds, allegedly because it prefers to use them as a set-off against Seatrain's debts. HBL now sues to recover money from the account, asserting claims under breach of contract and miscellaneous torts. The gravamen of each claim is that HBL is entitled to money from the account and that Chase refuses to give it any.

Chase moves to dismiss, asserting that HBL has no enforceable right to payments from the account. HBL presents three theories to support its claim to such an interest—1) that Chase's wrongful set-off was a tort, 2) that as intended beneficiary of a special account HBL is owed a fiduciary duty which Chase has breached, and 3) that it was a third-party beneficiary of the Agreement establishing the account. I turn now to the first argument.

### I.

The bank account in question was established by Article III of the aforementioned agreement between the Board and Shipbuilding. Article III reads as follows:

Article III. *Compensation and Payment*

The Board shall pay to Shipbuilding, on behalf of the Contractor compensation for the work performed hereunder in accordance with the following schedule: (a) $800,000.00 upon execution of this Agreement; said funds to be paid into an account maintained by Shipbuilding (the 'Special Account') at the Chase Manhattan Bank (National Association) having special account number 232-2-402989. No withdrawals from such Special Account may be made except upon countersignature by a duly authorized representative of the Board. The funds in the Special Account shall be applied to satisfy invoices of vendors to Shipbuilding in respect of labor, material and services furnished for the construction of Barges 034 and 035, with any balance remaining in the Special Account payable to the

Contractor after settlement of all such invoices or on delivery of Barge 034 by the Completing Shipyard, whichever occurs first.

(b) $100,000.00 upon Completion of the Shoreside Inventory of Barge 034.

(c) $100,000.00 upon completion of the Shoreside Inventory in respect to Barge 035.

 For the purposes of this motion to dismiss, Chase perforce concedes that the account established by the Agreement was a "special" account, as alleged in the complaint. A special account is one which the bank and depositor agree will be kept separate from the general funds of the bank. *Noah's Ark Auto Accessories, Inc. v. First National Bank of Rochester*, 64 Misc.2d 944, 316 N.Y.S.2d 663, 665 (Sup.Ct.1970). Ordinarily a special account is established for a particular purpose, and if the funds in it are not used for that purpose they must be returned to the depositor. *Cassedy v. Johnstown Bank*, 246 App.Div. 337, 286 N.Y.S. 202, 205 (1936). This characteristic distinguishes a special from a general account. The characteristic becomes important when the depositor defaults upon an obligation owed the bank. Funds in a general account may be set-off against the debt. Those in a special account may not. *Id.* Thus assuming as is alleged that this was a special account, and Chase applied its monies as a set-off, the bank acted improperly.

 I reject at the outset, however, the theory that this alleged action was a tort for which HBL may automatically recover damages. The alleged action is in the nature of the tort of conversion. In order to prevail on a cause of action for conversion, a plaintiff must demonstrate a possessory interest in the converted property. *Meese v. Miller*, 79 A.D.2d 237, 242–243, 436 N.Y.S.2d 496 (1981). HBL had no such interest in the funds at issue. Arguably if all steps necessary had been taken to designate HBL as a specific recipient of account funds, leaving only the formality of fund withdrawal, its interest would have been sufficient to stand as possessory. In order to be designated as a specific recipient, HBL would have had to have received Shipbuilding's agreement to pay and the Board's approval of payment. The latter requirement is implicit in the Agreement's requirement of Board countersignature to any withdrawal from the account. HBL pleads neither Shipbuilding's agreement nor the Board's approval.

Thus, from the pleadings one may conclude only that HBL was a creditor of Shipbuilding. If Chase is a converter, Shipbuilding is its victim. But HBL cites no cases which grant standing to a creditor of a victim of conversion to sue the converter. Liability for conversion does not run to all those arguably harmed by the conversion. "Wrongful set-off" is essentially a form of conversion. The same rule should apply. Not surprisingly, HBL cites no cases permitting creditors of special account depositors to recover damages when the account is set-off.

It may be argued that HBL is in slightly better shoes than a typical creditor. Funds were earmarked for payment of debts like those owed to it. As suggested above, however, until HBL was differentiated from the general class of barge creditors by an actual agreement to pay its interest in the account was not sufficient to permit recovery in tort.

## II.

 HBL asserts that the Agreement created in Chase a "fiduciary duty" running to all potential beneficiaries of the special account which forbids the set-off. Apparently its theory is that Chase assumed a legal relation in the nature of that of a trustee toward potential beneficiaries of the fund. An analysis of the cases cited, however, fails to support the theory. The cases reveal that to the extent a duty is created it runs not to potential beneficiaries but to those with a more direct interest in the fund: those in the shoes of, in our case, the Board and Shipbuilding.

In support of its theory HBL cites *United States v. Butterworth-Judson Corp.*, 267 U.S. 387, 45 S.Ct. 338, 69 L.Ed. 672 (1925) and *Straus v. The Tradesmen's Na-*

*tional Bank*, 122 N.Y. 379, 25 N.E. 372 (1890). In *Butterworth*, the government advanced the defendant corporation a substantial sum of money to finance the wartime construction of a picric acid manufacturing plant. The government simultaneously agreed to purchase the plant's output. The advanced money was placed in special accounts in various banks, and the defendant agreed to withdraw the money only to pay bills arising out of the building of the plant and the manufacturing of acid for the government.

Before the plant was completed the Armistice was signed. As was its contractual right, the government cancelled the plant in the midst of construction. Pursuant to the agreement, it reimbursed Butterworth and assumed all of its debts. Butterworth, meanwhile, was thrown into receivership. Neither it nor its receivers were able to account for much of the advance money, which was intended to pay the debts the government had assumed. Further, because Butterworth owed its banks more money than was left in the special accounts the banks set off the funds in these accounts against the debts. The government sued the receivers for an accounting and the banks to recover the set-off funds.

The Supreme Court, after finding that the balances in the special accounts were intended to provide security for the obligations of Butterworth (which the government assumed), held that the banks could not set off the funds. By accepting the funds with knowledge that they were to supply security, the banks were held to have accepted them subject to the potential claims of the government. *Butterworth, supra*, 267 U.S. at 395, 45 S.Ct. at 340.

Granted that this case reaffirms the duty of banks not to set off funds in special accounts, it does nothing to advance HBL's right to recover. The government was a party to the agreement which established the account, not a purported third party beneficiary. Further, because it assumed Butterworth's debts, the government es- sentially stood in the shoes of the depositor. While the Supreme Court mentioned in passing that the purpose of the fund was to pay those in HBL's position, 267 U.S. at 393, 45 S.Ct. at 340, it did not suggest that the bank owed these individuals an enforceable duty; the Court focused solely upon the interests of the United States, in effect the depositor.[1] The *Straus* holding is essentially identical to this and is of no additional help to plaintiff. Any fiduciary duty which exists runs to and is enforceable by those parties which established the account, not those who were potential beneficiaries of the funds in the account.

*Staten Island Cricket & Baseball Club v. Farmers' Loan & Trust Co.*, 41 App. Div. 321, 58 N.Y.S. 460 (1899) clarifies the distinction. The plaintiff in that action established a special account with the defendant bank. The purpose of the account was to supply a fund for payment of interest on bonds issued by the plaintiff. The plaintiff annually paid into the account the amount of interest due on the bonds, and the bondholders sent their coupons to the bank, which paid the coupons out of the special account. At some point the account held a surplus which the plaintiff sought to withdraw. The bank refused to permit withdrawal, insisting that it was the trustee for the bondholders by virtue of the agreement governing payment of the coupons.

The Appellate Division rejected this argument, holding that the agreement opening the account "... simply constituted a relation of debtor and creditor. We are of the opinion that by the act of deposit the plaintiff did not constitute the defendant a trustee, or impress the money with a trust inuring to the benefit of the bondholders; that its only effect was to constitute the defendant the agent of the plaintiff to distribute its moneys as it directed...." 58 N.Y.S. at 461. In other words, the creation of a special account alone does not create a fiduciary or trustee relationship between the bank and third parties for whose benefit the account was established.

---

1. The pertinent passage reads:
"The agreements made the balances in the special accounts security for the obligations of the contractor and so created an equitable lien in favor of the United States."

*See also Lewis v. Chase National Bank of City of New York,* 189 Misc. 190, 69 N.Y. S.2d 79 (Sup.Ct.1947) (funds set aside in special account for purchase of stock are not held in trust).[2]

### III.

Defendant's third argument is that it is a third party beneficiary of the agreements involving the Maritime Subsidy Board, Shipbuilding, and Chase and thus may force Chase to pay the funds from the special account.

■ It is clear that a third party may sue to enforce a contract made for its benefit. *Strauss v. Belle Realty Co.,* 98 A.D.2d 424, 469 N.Y.S.2d 948 (1983). Although the burden rests on the purported beneficiary to demonstrate that status, *Airco Alloys Division v. Niagra Mohawk Power Corp.,* 76 A.D.2d 68, 430 N.Y.S.2d 179, 186 (1980), it is no bar to HBL's recovery that it was not specifically named in the contract. *Strauss, supra,* 469 N.Y.S.2d at 950.

■ In order to enforce the contract, HBL must demonstrate that it was an intended, not an incidental, beneficiary of the contract. *Port Chester Electrical Construction Corp. v. Atlas,* 40 N.Y.2d 652, 389 N.Y.S.2d 327, 330, 357 N.E.2d 983 (1976). According to Williston, cited in *Salzman v. Holiday Inns, Inc.,* 48 A.D.2d 258, 369 N.Y.S.2d 238, 242 (1975), an incidental beneficiary is one who may derive benefit from the performance of the contract but is neither the promisee nor the one to whom performance is to be rendered. 2 W. Jaeger, *Williston on Contracts,* § 402, at 1088 (1959). *Salzman* explains the difference between the two types of beneficiaries by quoting an example from the *Restatement of Contracts,* § 133. The situation in the example is similar to the one at issue here, and it finds a party in plaintiff's shoes to have merely

unenforceable, incidental rights. *Salzman* quotes the Restatement thus:

"B promises A for sufficient consideration to pay whatever debts A may incur in a certain undertaking. A incurs in the undertaking debts to C, D and E. If, on a fair interpretation of B's promise, the amount of the debts is to be paid by B to C, D and E, they are [intended] beneficiaries; if the money is to be paid to A in order that he may be provided with money to pay C, D & E, they are at most incidental beneficiaries." 369 N.Y.S.2d at 242.

As Chase points out, the situation at hand is at best once removed from the example of an incidental beneficiary in the Restatement. In that example, the promisor agreed to pay the promisee's debts. In this situation, the promisor (the Board) merely agreed to set up an account in the promisee's (Shipbuilding's) name from which the promisee could pay its creditors. HBL is in a less favorable position than the beneficiary in the Restatement, which was itself "at most" an incidental beneficiary. It has no right to enforce the contract at issue.

■ In addition, the provision in Article III(a) that Chase shall release no funds without the countersignature of the Board compels the finding that the parties did not intend any vendor to benefit from the contract, incidentally or not, without prior approval by the Board. HBL has pleaded no such approval. It is thus clear that even if it could be a third party beneficiary of the contract it has failed to plead facts sufficient to demonstrate third party beneficiary status.

Plaintiff has no enforceable right against Chase. The complaint must be dismissed. At first blush this might seem an unjust result. Chase is alleged to have wrongfully converted funds which otherwise would

---

**2.** Although no case has so held, as mentioned above, it is arguable that once a beneficiary of funds in a special account has been specifically designated the beneficiary has a right to force the Bank to pay those funds to it. This would be the situation if, for example, the defendant in *Staten Island Cricket & Baseball Club* for some reason refused to pay bondholders whose cou-

pons were due. This right, however, would not arise out of any special duties created by the special account *per se* but from the specific contract of agency between depositor and bank which established the account. As discussed above, HBL does not plead that its potential interest ripened, like an overdue coupon, into an actual interest.

have gone to HBL, and HBL is helpless to prevent it. Yet the result is not so unfair as it might seem. Both Chase and HBL are creditors of Shipbuilding. The decision thus concerns which creditor's claims shall be satisfied first. So long as Shipbuilding is solvent, the choice of who to satisfy first belongs to it. HBL contracted in 1976. The Agreement was created in 1980. It thus did not rely in making its contract, nor does it plead reliance, on the possibility of being paid from the Agreement. Whether to give HBL a benefit from the Agreement lies entirely in the hands of the parties which created it. They chose not to do so, and HBL cannot in law complain of that choice.

It may well be that Chase was not entitled to setoff this money. But wrongful acts do not necessarily create remedies in all parties affected by them. Because under applicable banking and contract law HBL has no enforceable remedy, the Clerk of the Court is directed to dismiss the complaint with prejudice and with costs.

It is SO ORDERED.