**John KLUGE, Plaintiff,**

v.

**William D. FUGAZY, Defendant.**

**No. 87 Civ. 3404 (KTD).**

United States District Court,
S.D. New York.

March 6, 1990.

Shea & Gould (Martin Shelton, of counsel), and Hutton Ingram Yuzek & Gainen (David Ebert, of counsel), New York City, for plaintiff.

Coblence & Warner (Kenneth Warner, of counsel), and Lian, Geringer & Dolan (Roy Justice, of counsel), New York City, for defendant.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

Plaintiff John Kluge brings this diversity action to recover on a $100,000 loan made to defendant William D. Fugazy, Sr. Fugazy counterclaims that Kluge is indebted to Fugazy in the amount of $157,000 arising out of the lease-purchase of two buses. The bench trial of this matter was held on February 28, 1990 and March 1, 1990. The following constitutes my findings of fact and conclusions of law after consideration of all the evidence and exhibits presented.

1. It is also acknowledged on the record that documents admitted as Plaintiff's Exh. 1 contain Fugazy's confirmation that this amount is owed to Kluge.

2. Hopkins testified that he had been working as controller for a Kluge company, Kluge, Finkelstein & Co., since 1968. Although he is not a

## FACTS

This is a simple action to recover a loan of money plus interest. Fugazy admits in his Answer both the making of the loan and the rate of interest. Answer ¶¶ 2, 3.[1] Specifically, Kluge loaned Fugazy $100,000 on March 7, 1983, bearing a rate of interest of three-quarters of one per cent over the prime rate being charged by Manufacturers Hanover Trust Company to its customers. Answer ¶¶ 2, 3; Plaintiff's Exhs. 1, 2, 4, 5. Although Fugazy's Answer alleges that he repaid the loan, Fugazy admitted on the stand that in fact he did not pay it. Kluge's accountant,[2] Edward A. Hopkins, testified that Fugazy made only one payment of interest on the loan, and that as of February 28, 1990 there is due and owing a total of $155,896.39. *See* Plaintiff's Exh. 5.

The defense in this case is inexplicable without setting out the relevant background of the relationship between the parties. Prior to 1986, Kluge and Fugazy were apparently friends and maintained both a social and a business relationship. Kluge personally loaned money to various Fugazy corporations, of which there are quite a number. Among these loans was one made to Fugazy Continental Corporation on March 4, 1981, totalling $500,000. Fugazy testified that he was called on by Kluge in December 1982 to pay interest on the $500,000 loan by the end of that year. Fugazy stated that he did so by advancing his own money, although both he and his corporations were strapped for cash. In return, Fugazy testified that Kluge promised to extend further credit to Fugazy and his corporations. That promise was fulfilled over two months later by the loan for $100,000 which underlies this suit.

## DISCUSSION

■ Fugazy now argues at trial that he should not be held personally liable for the

certified public accountant, and does not prepare Kluge's tax returns, Hopkins testified that he does prepare information to be used by others in filing Kluge's returns. Hopkins also stated that since 1976 he has been involved in some of Kluge's personal business.

$100,000 loan because, in essence, that money was intended as a further, supplemental loan to cover unpaid interest on the $500,000 loan, and thus was to benefit Fugazy Continental Corporation and not himself. As such, Fugazy argues, repayment is the responsibility of Fugazy Continental Corporation. He therefore seeks to be permitted to amend his Answer to reflect this "defense," although it had not been articulated formally for the almost three years this case has been pending prior to trial.

Fugazy's argument has no basis in law or fact. The interest paid on the $500,000 loan in December 1982 for which Fugazy seeks to take credit was not paid by Fugazy personally. The payment was made by two checks: one in the amount of $70,-881.68, drawn on the account of Travelco Inc., and the other in the amount of $10,000 drawn on the account of Fugazy International Corp. See Defendant's Exh. S. Unless Fugazy is suggesting that the corporate veil should be pierced for all purposes between himself and all of the Fugazy corporations, his defense is insupportable. Accordingly, his belated motion to amend the Answer is denied.

■ Fugazy's defense and counterclaim actually raised in his Answer alleges a claim sounding in subrogation, which also requires that more background information be set forth to be understood. Fugazy's money problems are seemingly long standing. In late 1980, Fugazy Continental Leasing Corporation ("FCLC") sought to acquire two buses, evidently for use by another Fugazy corporation. Because the Fugazy family of corporations did not have the money to purchase the buses, FCLC entered into a lease-purchase agreement with Associates Commercial Corporation ("Associates"), a corporation engaged in the business of financing the purchase of transportation equipment. On September 29, 1980, as part of this lease-purchase arrangement, FCLC became indebted to Associates in the amount of $418,156.80 under a written agreement. Pursuant to a Security Agreement, the $418,156.80 was to be paid to Associates by Fugazy in ninety-six monthly installments of $4,355.80.

Defendant's Exh. H. This Security Agreement was guaranteed by Fugazy, individually, as well as by Fugazy Continental Corporation of Connecticut and Fugazy International Corporation.

Sometime shortly after the lease-purchase arrangement was entered into, Fugazy again found himself short of cash. He apparently turned to Kluge for help. Fugazy convinced Kluge that Kluge should acquire title to the two buses so that he could use them as a tax shelter. Kluge agreed and also permitted the buses to continue to be used by the Fugazy family of corporations. Kluge signed various documents to achieve this arrangement, including an Installment Note to Associates requiring Kluge to assume payment of the monthly installments of $4,335.80 to Associates. Defendant's Exhs. D–G. Under a Lease Agreement, Fugazy Continental Corp. as lessee was to pay Kluge $5,337.52 per month for the use of the buses. Defendant's Exh. C.

Significantly, the documents that constitute the assignment of Fugazy's arrangement with Associates to Kluge were all specifically subject to approval by Associates. See Defendant's Exhs. C, D, G. However, none of those documents are signed by anyone from Associates, and no proof was introduced to suggest that they were. No payments were ever made to Kluge by FCLC pursuant to the Lease Agreement, and Kluge apparently did not make payments to Associates.

It thus appears clear that none of the documents signed by Kluge in the bus transaction were ever forwarded to Associates for approval. As such, the assignment to Kluge was not effective, and title to the two buses remained in the Fugazy corporations. Presumably all that Kluge received as a result of the bus transactions were the closing documents and an insurance binder for one year's insurance on the buses. Plaintiff's Exh. 8; Defendant's Exh. L.

Fugazy relies on the fact that Kluge, apparently believing himself to be the owner of the two buses, took a normal depreciation for them on his tax return. The

amount of total tax benefit to Kluge was about $3,097. Defendant's Exh. J. From Fugazy's testimony, however, I cannot but conclude that one of the motivating forces behind the sale of the buses to Kluge was the tax benefits that Kluge supposedly obtained. Moreover, by keeping the sale of the buses to Kluge in a state of suspension, Fugazy kept title to the buses, kept all of the tax benefits for himself and his corporations, and procured Kluge's money for the original installments.

On or about February 20, 1986, Associates brought suit in the Southern District of New York against Fugazy, individually, FCLC, and the other Fugazy corporations involved in the September 1980 lease-purchase arrangement, alleging a default under the Security Agreement and the Continuing Guarantees. Associates did not name Kluge as a defendant in that action. Although Fugazy testified that it "had always been a mystery" to him why Kluge was not sued by Associates, it is clear that Associates had no knowledge of the purported assignment to Kluge. Associates never approved the various sale, assignment, and lease documents between Kluge and FCLC relating to the bus transactions. Kluge was thus not obligated to pay Associates, and did not do so. It is therefore not surprising that Associates did not sue Kluge on the bus transaction; if it had known of and agreed to Kluge's assumption of the installment payments it is almost a certainty that Associates would have sued Kluge rather than Fugazy, considering the relative financial conditions of the parties.

An Answer was filed on behalf of Fugazy and the various Fugazy corporations in the Associates action. That Answer did not seek to name Kluge as a third-party defendant or to bring him into the suit in any manner, although Fugazy and his counsel undoubtedly knew that Kluge had agreed to assume payment to Associates under the documents Kluge signed in December 1980. Indeed, that is the basis for Fugazy's assertion of his counterclaim in the instant suit.

Associates moved before Judge Sweet of this court for summary judgment against Fugazy and the corporate defendants. No opposition to the request for summary judgment was filed and Judge Sweet granted the motion. Plaintiff's Exh. 8. Judgment was entered in favor of Associates in the amount of $195,468.55 on June 9, 1986. Defendant's Exh. O. Thereafter, on or about December 19, 1986, Associates entered into a Stipulation of Settlement with Fugazy and the various Fugazy corporations whereby the amount was reduced to $157,000. Apparently that sum was paid to Associates by Fugazy International Travel, an entity allegedly owned by Fugazy's son. Plaintiff's Exh. 10. Fugazy himself thus paid none of the judgment or the settlement to Associates, although he testified that he obligated himself in some manner to repay the corporate entity or his son. No document was produced to substantiate that obligation.

In light of the fact that Fugazy failed to bring Kluge into the Associates action, I find that Fugazy's "defense and counterclaim" against Kluge here to be too little, too late. Rule 19 of the Federal Rule of Civil Procedure provides, in pertinent part:

> A person ... shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest....

The counterclaim asserted here is purely derivative. If Fugazy had not defaulted on the summary judgment motion in the Associates lawsuit, it is clear that he would have no counterclaim in this case. There is no suggestion that Fugazy did not know at the time of the Associates suit about Kluge's purported assumption of the payments to Associates. There is no explana-

tion in the record of why Fugazy did not implead Kluge in that action. Nor is there any suggestion that Kluge was not amenable to process at the time of the Associates suit. Clearly there would have been jurisdiction over the third-party action. There is thus no reason for Fugazy's failure to bring Kluge into the Associates action. Having failed to do so, Fugazy has seriously undermined the assertion of that defense in this action.

 Moreover, to the extent Fugazy's counterclaim sounds in subrogation, he cannot raise it unless he has standing to do so. From the facts before me, it is evident that he does not. In order to assert a claim under a subrogation theory, it was necessary for Fugazy to have applied either his money or property to discharge the obligation of another to a third party. *Salzman v. Holiday Inn, Inc.*, 48 A.D.2d 258, 262, 369 N.Y.S.2d 238 (4th Dep't 1975), *mod. on other grounds*, 40 N.Y.2d 919, 389 N.Y.S.2d 576, 358 N.E.2d 268 (1976). However, Fugazy himself did not pay any amount to Associates; Fugazy International Travel did. Fugazy is thus not entitled to raise a claim as subrogee of Associates.

Furthermore, the evidence at trial reveals that the buses at issue in the Associates suit were never owned by Kluge. In early 1988, the buses were transferred by FCLC to the Cape Carlyn Coach Builders Inc. of Goodview, Virginia. Although Fugazy, while on the witness stand, was unable to identify his signature on the documents transferring title, I find as a matter of fact that those documents do bear Fugazy's signature. Among the documents signed by Fugazy are two letters on the letterhead of Fugazy International, each to the effect that the buses were "never sold to John Kluge." Plaintiff's Exh. 9.

These documents were signed and filed in the Department of Motor Vehicles of the Commonwealth of Virginia in January, 1988 and March, 1988. They were obviously prepared with a view toward filing with a state agency and with full knowledge of the existence of this suit and the counterclaim set forth in the Answer. Although

Fugazy contended on the stand that no consideration was paid for the buses in these transactions, I cannot believe that.

In sum, Kluge is entitled to judgment in the amount of $153,896.39 plus continuing interest and costs. Fugazy's counterclaim has no legal or factual basis. As such it is dismissed. Settle judgment on five (5) days' notice within ten (10) days of the date hereof.

SO ORDERED.