Fields Enters. Inc. v Bristol Harbour Vil. Assn., Inc. (2023 NY Slip Op 03165)

Fields Enters. Inc. v Bristol Harbour Vil. Assn., Inc.

2023 NY Slip Op 03165

Decided on June 9, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 9, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, BANNISTER, AND MONTOUR, JJ.

1008 CA 21-01512

[*1]FIELDS ENTERPRISES INC. AND BRISTOL HARBOUR MARINA, LLC, PLAINTIFFS-APPELLANTS,
v
BRISTOL HARBOUR VILLAGE ASSOCIATION, INC., AND SOUTH BRISTOL RESORTS LLC, DEFENDANTS-RESPONDENTS. 

KNAUF SHAW LLP, ROCHESTER (ALAN J. KNAUF OF COUNSEL), FOR PLAINTIFFS-APPELLANTS. 
RUPP BAASE PFALZGRAF CUNNINGHAM, BUFFALO (MATTHEW C. LENAHAN OF COUNSEL), FOR DEFENDANT-RESPONDENT BRISTOL HARBOUR VILLAGE ASSOCIATION, INC. 

 Appeal from a judgment (denominated order) of the Supreme Court, Ontario County (J. Scott Odorisi, J.), entered September 10, 2021. The judgment, inter alia, denied the motion of plaintiffs for partial summary judgment and granted in part the cross-motion of defendant Bristol Harbour Village Association, Inc., for partial summary judgment. 
It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by denying the cross-motion insofar as it sought a declaration that defendant Bristol Harbour Village Association, Inc. has standing to enforce the 1990 Stipulation, vacating the third and fourth decretal paragraphs, granting the motion in part and granting judgment in favor of plaintiffs as follows:
It is ADJUDGED and DECLARED that defendant Bristol Harbour Village Association, Inc. does not have standing to enforce the 1990 Stipulation,
and as modified the judgment is affirmed without costs.
Memorandum: Plaintiffs, Fields Enterprises Inc. (FEI) and Bristol Harbour Marina, LLC (BHM), commenced this action for a declaratory judgment and other relief relating to, among other things, the use of an elevator owned by defendant Bristol Harbour Village Association, Inc. (BHVA) that provides access to a marina owned by FEI and operated by BHM. Plaintiffs appeal from a judgment that, inter alia, denied their motion for partial summary judgment seeking certain declarations relating to the use of the elevator and access to the marina and granted in part BHVA's cross-motion for partial summary judgment seeking certain declarations in its favor relating to the use of the elevator and access to the marina.
BHVA is a homeowners' association (HOA) that has managed a residential community, nonparty Bristol Harbour Village (Village), on the west shore of Canandaigua Lake since 1971. During the development of the Village, nonparty Bristol Harbour Realty Associates (BHRA) submitted an application to undertake Phase I of a project consisting of the construction of a golf clubhouse and 118 residential units in the Village. Neighboring landowners, concerned that the additional development of the Village would increase vehicle and boat traffic, formed an unincorporated association, nonparty Concerned Citizens of Canandaigua Lake (CCCL), which is now defunct, for the purpose of opposing BHRA's development of the Village and the authorizing permits that BHRA was seeking for construction. In 1990, after extensive negotiations, BHRA, CCCL's officers and members of its steering committee, and certain neighboring landowners entered into a stipulation regarding the use of the boat slips at the marina [*2](1990 Stipulation). As relevant here, the 1990 Stipulation provided that the boat slips located on the lakefront and shoreline of the Village "shall be further developed only for the use and benefit of owner occupied or owner leased residential units." At the time the 1990 Stipulation was signed, there were 128 boat slips at the marina. Nine of the slips were reserved for use by BHRA. "Of the remaining 119 boat slips, some [were] rented or available for rent to persons other than [Village] Residential Owners." The 1990 Stipulation provided that, "[a]s demand increases, those slips are eventually to be reserved only for [Village] Residential Owners." It further provided that, once the existing 128 slips were utilized solely by the Village residents and BHRA, BHRA could "construct up to 97 additional boat slips or moorings for a maximum of 225," and CCCL would not object to that construction. However, the 1990 Stipulation also provided that the "additional slips or moorings shall also be for the exclusive use only of [Village] Residential Owners." BHRA "agree[d] that the maximum number of slips and moorings at the [Village] shall never exceed 280 and that any and all additional slips shall be constructed solely for the use of [Village] Residential Owners." The 1990 Stipulation further explained that "[w]aterfront, beach and docking facilities [were] intended to be used primarily by [Village] Residential Owners and not by members of the general public." In return, CCCL agreed that it would "not actively seek to require that draft or final environmental impact statements be prepared before the undertaking of Phase I and [would] not . . . initiate [CPLR a]rticle 78 or other judicial proceedings objecting to the undertaking of Phase I." The 1990 Stipulation provided that it "shall be fully operative and binding upon [BHRA], its successors, heirs, assignees, and transferees. To the maximum extent possible the terms and conditions herein contained shall run with the land and be fully operative not only upon [BHRA], but also upon any persons or legal entity with whom [BHRA] may be affiliated in undertaking development at [the Village], and their successors."
FEI purchased the marina in 2016 from a holding company that was a successor in interest to, inter alia, BHRA. The marina is currently accessible only through parcels of land owned by BHVA and by use of the elevator in question. In May 2020, BHVA's Board of Directors informed plaintiffs that, "[d]ue to the C[OVID-]19 pandemic," BHVA would "be implementing strict regulations over the use of [its] elevator" and that, "initially," only residents of the Village would be permitted to use it. Plaintiffs thereafter commenced this action seeking, inter alia, a judgment declaring that they and their invitees, including non-Village residents, had a right to use the elevator. Subsequently, Supreme Court denied plaintiffs' motion and granted BHVA's cross-motion in part by declaring that BHVA is both an intended third-party beneficiary of the 1990 Stipulation and an inured successor to the 1990 Stipulation and, therefore, has standing to enforce the 1990 Stipulation, and that BHVA has the authority to reasonably regulate and manage its own land, including but not limited to parcels of land it owns that are needed to access the marina, pursuant to its governing documents.
We agree with plaintiffs that the court should have granted their motion in part inasmuch as BHVA does not have standing to enforce the 1990 Stipulation as either a third-party beneficiary or an inured successor. "[A] third party may sue as a beneficiary on a contract made for [its] benefit. However, an intent to benefit the third party must be shown, and, absent such intent, the third party is merely an incidental beneficiary with no right to enforce the particular contracts" (Dormitory Auth. of the State of N.Y. v Samson Constr. Co., 30 NY3d 704, 710 [2018] [internal quotation marks omitted]; see Airco Alloys Div. v Niagara Mohawk Power Corp., 76 AD2d 68, 79 [4th Dept 1980]). Thus, "[p]arties asserting third-party beneficiary rights under a contract must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [their] benefit and (3) that the benefit to [them] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [them] if the benefit is lost" (Matter of Coalition for Cobbs Hill v City of Rochester, 194 AD3d 1428, 1436 [4th Dept 2021] [internal quotation marks omitted]; see Mendel v Henry Phipps Plaza W., Inc., 6 NY3d 783, 786 [2006]). "One is an intended beneficiary if one's right to performance is appropriate to effectuate the intention of the parties to the contract and either the performance will satisfy a money debt obligation of the promisee to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance" (Cole v Metropolitan Life Ins. Co., 273 AD2d 832, 833 [4th Dept 2000] [internal quotation marks omitted]; see generally Salzman v Holiday Inns, 48 AD2d 258, 261 [4th Dept 1975], mod on other grounds 40 NY2d 919 [1976]).
Here, plaintiffs established on their motion that BHVA does not have standing to enforce [*3]the 1990 Stipulation as a third-party beneficiary (see generally Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). It is undisputed that there was a valid contract between BHRA, which owned the marina and other portions of the Village, CCCL's officers and members of its steering committee, and the individual adjoining landowners. BHRA intended to give CCCL and the adjacent landowners the benefit of the promised performance by limiting the future number of people using the marina to only those who were Village residents. There is no indication in the 1990 Stipulation that BHRA also intended to give Village residents the benefit of the promised performance or assumed a duty to make reparations to BHVA, or the Village residents, if the alleged benefit was lost. Indeed, in the 1990 Stipulation, BHRA agreed to limit the rights of Village residents for the benefit of CCCL and the adjacent landowners. Thus, plaintiffs established that BHVA is at best merely "an incidental beneficiary . . . who may derive [a] benefit from the performance of a contract though [it] is neither the promisee nor the one to whom performance is to be rendered" (Cole, 273 AD2d at 833).
We further agree with plaintiffs that they established that BHVA may not seek enforcement of the 1990 Stipulation as an inured successor (see generally Alvarez, 68 NY2d at 324). Restrictive covenants "restrain servient landowners from making otherwise lawful uses of their property . . . However, the law has long favored free and unencumbered use of real property, and covenants restricting use are strictly construed against those seeking to enforce them" (Witter v Taggart, 78 NY2d 234, 237 [1991]). "Where . . . a covenant runs with the land, the covenant will be enforceable against any subsequent purchaser of the land" (National Urban Ventures, Inc. v City of Niagara Falls, 78 AD3d 1529, 1529-1530 [4th Dept 2010]). "In determining who can enforce covenants which run with the land, the courts have recognized three classes of covenants . . . The first are those entered into with the design to carry out a general scheme for the improvement or development of real property, which are enforceable by any grantee . . . The second class are those created by the grantor, presumptively or actually, for the benefit and protection of contiguous or neighboring lands retained by the grantor . . . The grantor and [their] assigns of the property benefited by the second type of covenant may enforce it . . . , and there is no need to show a common scheme or plan . . . The third class of restrictive covenants concerns mutual covenants between owners of adjoining lands" (Haldeman v Teicholz, 197 AD2d 223, 224-225 [3d Dept 1994]). "A successor in interest is [o]ne who follows another in ownership or control of property and retains the same rights as the original owner, with no change in substance" (Wien & Malkin LLP v Helmsley-Spear, Inc., 6 NY3d 471, 482 n 12 [2006], cert dismissed 548 US 940 [2006] [internal quotation marks omitted]). "One of the elements of a restrictive covenant that runs with the land is that the parties intended its burden to attach to the servient parcel and its benefit to run with the dominant estate" (Haldeman, 197 AD2d at 225).
Here, BHVA "is not the owner of [the] dominant estate which was intended to benefit from the restrictive covenants [limiting the number of slips and to whom they may be rented] in the [1990 Stipulation]" (id. at 226). Further, as a nonparty to the 1990 Stipulation, BHVA's "standing to enforce the covenants is dependent upon a showing of 'the clear intent to establish the restriction for the benefit of the party suing or [their] grantor' " (Thomas v June, 194 AD2d 842, 845 [3d Dept 1993], quoting Equitable Life Assur. Socy. of U.S. v Brennan, 148 NY 661, 672 [1896] [emphasis added]). Indeed, the restriction at issue—i.e., the number of slips in the marina and to whom they may be rented—did not benefit BHVA's predecessor in interest, BHRA. Rather, it was a concession made by BHRA for the benefit of CCCL and the adjoining landowners. Thus, BHVA cannot show that it "held property descendant from the promisee which benefited from the covenant" (Orange & Rockland Util. v Philwold Estates, 52 NY2d 253, 263 [1981] [emphasis added]).
In opposition to plaintiffs' motion, BHVA failed to raise an issue of fact whether plaintiffs are entitled to a declaration that BHVA does not have standing to enforce the 1990 Stipulation and, for the same reasons, we conclude that BHVA is not entitled on its cross-motion to a declaration that it has standing to enforce the 1990 Stipulation (see generally Alvarez, 68 NY2d at 324). We therefore modify the judgment accordingly. To the extent that plaintiffs contend that they are entitled to any additional declarations in connection with their motion, we reject that contention. In light of our determination, the remainder of plaintiffs' contentions with respect to the 1990 Stipulation are academic.
Finally, we reject plaintiffs' contention that the court erred in granting BHVA's cross-motion to the extent that it sought a declaration with respect to its authority to reasonably [*4]regulate and manage its own land, including the parcels that it owns that are needed to access the marina, pursuant to its governing documents. "In reviewing the reasonableness of [an HOA's] exercise of its rule-making authority, absent claims of fraud, self-dealing, unconscionability or other misconduct, the court should apply the business judgment rule and should limit its inquiry to whether the action was authorized and whether it was taken in good faith and in furtherance of the legitimate interests of the [HOA]" (LoRusso v Brookside Homeowner's Assn., Inc., 17 AD3d 323, 324-325 [2d Dept 2005], lv dismissed 5 NY3d 783 [2005] [internal quotation marks omitted]; see Matter of Levandusky v One Fifth Ave. Apt. Co., 75 NY2d 530, 533 [1990]). "Stated somewhat differently, unless a resident challenging the [HOA's] action is able to demonstrate a breach of [the HOA's] duty, judicial review is not available" (Levandusky, 75 NY2d at 538). "The business judgment rule protects the [HOA's] business decisions and managerial authority from indiscriminate attack. At the same time, it permits review of improper decisions, as when the challenger demonstrates that the [HOA's] action has no legitimate relationship to the welfare of the cooperative, deliberately singles out individuals for harmful treatment, is taken without notice or consideration of the relevant facts, or is beyond the scope of the [HOA's] authority" (id. at 540). Here, BHVA's governing documents grant it the authority to impose reasonable limitations on the use of the land that it owns, including with respect to access to its elevator.
Entered: June 9, 2023
Ann Dillon Flynn
Clerk of the Court